■ In the Matter of the Guardianship of JONATHAN EE., a Developmentally Disabled Person. ALYSSA M. BARREIRO et al., as Coguardians of JONATHAN EE., Respondents-Appellants; ALAN EE. et al., Respondent, et al., Respondent. (Proceeding No. 1.) In the Matter of the JONATHAN EE. TRUST NUMBER ONE. ALYSSA M. BARREIRO et al., as Coguardians of JONATHAN EE., Respondents-Appellants; BARRY EE., as Trustee for the JONATHAN EE. TRUST NUMBER ONE, Appellant-Respondent. (Proceeding Number 2.) (And Another Related Proceeding.) [927 NYS2d 171]—

Egan Jr., J.

The underlying facts are more fully set forth in a prior decision of Surrogate's Court (*Matter of Jon Z.*, 24 Misc 3d 1240[A], 2009 NY Slip Op 51821[U] [2009]). Briefly, Jonathan EE. (born in 1987), who is autistic, is the son of Caren FF. (hereinafter the mother) and Alan EE. (hereinafter the father). Following their divorce in 2002, the mother and the father were granted joint legal custody of Jonathan and his sister and also were appointed as Jonathan's coguardians. Difficulties thereafter arose and, in July 2009, Surrogate's Court, among other things, terminated

the parents' coguardianship and appointed petitioners, pursuant to SCPA article 17-A,[1] to serve as Jonathan's coguardians for one year or until further order of the court.

In October 2009, petitioners commenced proceeding No. 1 seeking guardianship fees through August 31, 2009 and requesting that such fees be paid either by the parents or from the assets of the supplemental needs trust established for Jonathan's benefit (see EPTL 7-1.12).[2] Petitioners thereafter submitted updated time records and, following various appearances in Surrogate's Court and the commencement of a separate proceeding by the mother, Surrogate's Court awarded petitioners fees and disbursements totaling $41,872 and directed that such moneys be paid entirely from the trust.[3] Barry EE., Jonathan's uncle and a trustee of the supplemental needs trust, thereafter appealed,[4] and petitioners cross-appealed from so much of the underlying order as held that the mother and the father were not liable for payment of the guardianship fees.[5]

Although the parties debate both the reasonableness of the fees awarded and the appropriate source for the payment thereof, these issues need not detain us, as our review of the relevant statutory scheme fails to disclose any authority for the award of such fees to petitioners in the first instance. Accordingly, the order of Surrogate's Court is reversed, and petitioners' applications for guardianship fees are dismissed.

The Legislature has expressly provided for an award of "reasonable compensation" when an individual has been appointed either as a guardian ad litem pursuant to SCPA article 4 or as a

---

1. The original SCPA article 17-A (L 1969, ch 1143, § 1) permitted the appointment of a guardian only for an individual whose diagnosis was mental retardation and, hence, did not encompass individuals who were developmentally disabled but not mentally retarded. To address that deficiency, SCPA former article 17-A was repealed in 1989 and replaced with the current version (L 1989, ch 675, § 4; see Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA art 17-A, at 104), which, insofar as is relevant to these proceedings, permits Surrogate's Court to appoint a guardian for an individual whose disability is attributable to autism (see SCPA 1750-a [1] [a]).

2. Petitioners also commenced a separate proceeding against the supplemental needs trust (proceeding No. 2) seeking the same relief.

3. In the interim, Surrogate's Court granted petitioners' request to resign and appointed the Commissioner of Social Services as a temporary guardian for Jonathan.

4. To the extent that Barry EE.'s notice of appeal misstates the date of entry, we will exercise our discretion and treat the notice of appeal as valid (see CPLR 5520 [c]; Matter of Randi NN. [Randi MM.—Joseph MM.], 80 AD3d 1086, 1086 n [2011], lv denied 16 NY3d 712 [2011]).

5. Surrogate's Court granted Barry EE.'s subsequent application for a stay pending appeal.

guardian of an incapacitated person pursuant to Mental Hygiene Law article 81 (*see* SCPA 405 [1]; Mental Hygiene Law § 81.28 [a]). No corresponding provision, however, appears in SCPA article 17-A—the statutory provision under which petitioners were appointed here.

In this regard, "[i]t is a general rule of statutory construction that . . . when enacting a statute the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject" (McKinney's Cons Laws of NY, Book 1, Statutes § 222, Comment, at 384; *see People v Keyes*, 141 AD2d 227, 230 [1988], *affd* 75 NY2d 343 [1990]; *Purcell v Regan*, 126 AD2d 849, 852 [1987], *lv denied* 69 NY2d 613 [1987]). Thus, in adopting Mental Hygiene Law article 81 and SCPA articles 4 and 17-A, we must assume that the Legislature's failure to provide for the compensation of guardians appointed under SCPA article 17-A was not a mere oversight but, rather, represented a reasoned and intentional decision. To the extent that Surrogate's Court found that authority for the payment of guardianship fees under SCPA article 17-A may be derived or implied from other statutory sources (citing SCPA 2307 and EPTL 7-1.12), we need note only that "[a] court cannot by implication supply in a statute a provision which is reasonable to suppose the Legislature intended intentionally to omit" (McKinney's Cons Laws of NY, Book 1, Statutes § 74; *see Matter of Doe v City of Schenectady*, 84 AD3d 1455, 1458 [2011]; *Matter of Lewandowski v New York State & Local Police & Fire Retirement Sys.*, 69 AD3d 1027, 1028-1029 [2010]). Hence, Surrogate's Court was without authority to grant petitioners' fee applications, and any remedy in this regard lies with the Legislature—not this Court. Having so concluded, petitioners' cross appeal concerning the parents' liability for such fees is academic.

Mercure, J.P., Spain and Kavanagh, JJ., concur. Ordered that the order is reversed, on the law, without costs, and petitions dismissed.