*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 18, 2016                    519907
_____

In the Matter of WILLIAM BB.,
                    Respondent,

         v                                      MEMORANDUM AND ORDER

MELISSA CC.,
                    Appellant.

(And Another Related Proceeding.)
_____

Calendar Date:  January 5, 2016

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

                    _____

       John Ferrara, Monticello, for appellant.

       Gail B. Rubenfeld, Monticello, for respondent.

       Michael C. Ross, Bloomingburg, attorney for the child.

                    _____

Egan Jr., J.

       Appeal from an order of the Family Court of Sullivan County
(McGuire, J.), entered September 26, 2014, which, among other
things, granted petitioner's application, in a proceeding
pursuant to Family Ct Act article 6, for custody of the parties'
child.

       Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the unmarried parents of a child
(born in 2001).  Although the parties lived together briefly, the
mother moved out of their shared residence when the child was
approximately nine months old.  For the next 12 years, the
parties had an informal custodial arrangement, with the child

residing with the mother (and other members of the mother's household) but enjoying parenting time with the father on a regular basis.

In July 2013, the mother and the child moved out of the residence that they were sharing with the mother's boyfriend — a move apparently occasioned due to ongoing discord between the three of them. The mother and the father previously had discussed the possibility of the child coming to live with him and, in September 2013, the child moved in with the father, who resided with his mother, his sister and his nephew.[1] During the ensuing 2013-2014 school year, the child resided with the father and primarily spent time with the mother every other weekend.

In July 2014, the father — fearing that the mother was going to relocate out of state with the child — filed a petition seeking custody. Shortly thereafter, the mother — citing the child's poor academic performance while in the father's care — cross-petitioned seeking similar relief. Following a lengthy fact-finding hearing and a Lincoln hearing, Family Court, among other things, granted the father's petition and awarded the parties joint legal custody of the child with primary physical custody to the father and visitation to the mother on alternating weekends. This appeal by the mother ensued.[2]

---

[1] The precise circumstances surrounding this change in physical custody are subject to dispute. The mother contended that this arrangement had been under discussion for some time, and she finally elected to give the father an opportunity to be the primary custodial parent. The father, although agreeing that a change in custody had been discussed, contended that the child was summarily dropped off at his house with a limited supply of clothes after the mother stated that she "couldn't handle [the child] anymore."

[2] Although the mother's notice of appeal misstates the entry date for Family Court's order, "we will exercise our discretion and treat the notice of appeal as valid" (Matter of Jonathan EE. [Barreiro—Alan EE.], 86 AD3d 696, 697 n 4 [2011], lv denied 18 NY3d 806 [2012]).

We affirm.  Preliminarily, the mother and the attorney for the child fault Family Court for failing to, among other things, order psychological evaluations of the parties and various investigations and reports pursuant to Family Ct Act §§ 251 (a), 255, 653 and 1034 (1) (b).  Although the mother indeed requested certain reports and evaluations in the context of her cross petition, no further request for such evaluations was made prior to or during the course of the fact-finding hearing, nor was any objection raised relative to the lack thereof.  Accordingly, we deem these arguments to be unpreserved for our review (see Musacchio v Musacchio, 107 AD3d 1326, 1327 [2013]; Matter of Canfield v McCree, 90 AD3d 1653, 1654 [2011]; see also Matter of Michelle S., 195 AD2d 721, 722 [1993]).  In any event, the ordering of such reports and evaluations is a matter committed to Family Court's sound discretion, and we perceive no abuse of that discretion here (see Matter of Adam MM. v Toni NN., 124 AD3d 955, 957 [2015]).

Turning to the merits, "[t]he paramount consideration in an initial custody proceeding is the child's best interests, taking into consideration such factors as the parents' past performance, relative fitness, willingness to foster the child's relationship with the other parent and ability to maintain a stable home and provide for the child's overall well-being" (Matter of Benjamin v Lemasters, 125 AD3d 1144, 1145 [2015]; see Matter of Melissa WW. v Conley XX., 88 AD3d 1199, 1200 [2011], lv denied 18 NY3d 803 [2012]).  "Given the superior position of Family Court to evaluate the testimony and assess the credibility of witnesses, its determination is accorded great deference and will remain undisturbed so long as it is supported by a sound and substantial basis in the record" (Matter of Keen v Stephens, 114 AD3d 1029, 1030 [2014] [citations omitted]; see Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2014]).  Such deference is particularly warranted where, as here, the parties present such divergent accounts of the underlying facts (see Matter of Jodi S. v Jason T., 85 AD3d 1239, 1241 [2011]).

Upon reviewing the record as a whole, we find that the parties are on relatively equal footing with respect to past performance, suitable housing and child care arrangements, as well as their respective abilities to financially provide for the

child and to foster a meaningful relationship between the child and the other parent. Indeed, as Family Court observed, it is to the parties' credit that they were able to work in a cooperative fashion for the good of their child for the first 12 years of her life without the benefit of a formal custody arrangement or order. As to the issue of relative fitness, the record reflects that the mother and the father each had demonstrated various strengths and weaknesses over the years. Although Family Court expressed concerns regarding the father's alcoholism,[3] Family Court was deeply troubled by what it regarded as the mother's acts of "sabotage" with respect to the child's education, as well as the mother's willingness to move the child back into a "high anxiety" household with the promise that she would seek counseling for the child if certain preexisting — and apparently unresolved — problems persisted.

With respect to the education issue, it is apparent that the child struggled in school both before and after she went to live with her father; the child was either absent or tardy on multiple occasions while residing with the mother and, although she was promoted to the next grade, the child failed two subjects during the 2013-2014 school year while residing with the father. The record reflects, however, that the father was actively engaged in providing educational support for the child — working closely with the child's teachers and guidance counselor, arranging for her to receive additional help both in school and through an after-school program, assisting the child with her homework and ensuring that he and the mother received weekly progress reports from the school. The mother, on the other hand, despite her advanced degrees and awareness of the child's struggles, effectively abdicated responsibility for the child's education to the father. In addition to making what Family Court

---

[3] The father had three prior felony convictions for driving while intoxicated but, unlike the parent in Matter of Colleen GG. v Richard HH. (135 AD3d 1005 [2015]), the father was engaged in, among other things, outpatient therapy, had attained an extended period of sobriety in the past and had an extensive network of individuals to provide transportation until he was able to apply for a conditional license.

regarded as a "conscious decision" not to be involved in the child's education, the mother also demonstrated what Family Court viewed as a complete disregard "for the father's role as the custodial parent" when, despite the child's ongoing academic issues, she (1) took the child out of school for at least three days in order to participate in a family vacation, and (2) allowed the child to miss two final exams at the end of the 2013-2014 school year. Family Court also expressed concerns regarding the family dynamic in the mother's household – specifically, the mother's admission that the child was the impetus behind her decision to break up with her boyfriend and move out of their shared residence, as well as the mother's acknowledgment "that there's a chance that [the problems that precipitated her departure] will start up again" if she regained physical custody of the child. Based upon such proof, Family Court determined that the child would enjoy greater stability in the father's household. Upon reviewing the record as a whole and granting deference to Family Court's credibility determination, we conclude that Family Court's findings in this regard are supported by a sound and substantial basis in the record and, as such, will not be disturbed. The mother's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch and Clark, JJ., concur.


ORDERED that the order is affirmed, without costs.




ENTER:

Robert D. Mayberger
Clerk of the Court