*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   July 9, 2015                    517379
_____

In the Matter of VANITA UU.,
                    Respondent,

        v
                                        MEMORANDUM AND ORDER
MAHENDER VV.,
                    Appellant.

(And Other Related Proceedings.)
_____

Calendar Date:   May 28, 2015

Before:   Garry, J.P., Egan Jr., Rose and Lynch, JJ.

                    _____


        D.J. & J.A. Cirando, Syracuse (John A. Cirando of counsel), for appellant.

        McNamee, Lochner, Titus & Williams, PC, Albany (Bruce J. Wagner of counsel), for respondent.

        Kim C. Lawyer, Delmar, attorney for the child.

                    _____


Egan Jr., J.

        Appeals (1) from two orders of the Family Court of Albany County (Maney, J.), entered December 14, 2012, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody, (2) from an order of said court, entered December 14, 2012, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, for an order of protection, (3) from an order of said court, entered December 14, 2012, which dismissed respondent's application, in a proceeding pursuant to Family Ct Act article 6, to hold petitioner in violation of a

prior custody order, and (4) from an order of said court, entered December 21, 2012, which denied respondent's request for counsel fees.

The parties are the divorced parents of a child (born in 2001). Pursuant to the parties' 2003 judgment of divorce, the child's primary physical placement was to be with petitioner (hereinafter the mother), and respondent (hereinafter the father) was awarded parenting time with the child on alternating weekends, in addition to other specified periods. The judgment of divorce did not make an express award of legal custody, directing instead that the day-to-day decisions relative to the child would be made by the party in whose custody the child was at that point in time – with final decision-making authority resting with the mother. In May 2010, the parties entered into a stipulation, which was reduced to a court order, permitting the mother to relocate from Onondaga County to Albany County; primary physical custody of the child – and final decision-making authority – remained with the mother, and a detailed visitation schedule was established for the father.

Insofar as is relevant to these appeals, the mother filed a modification petition in August 2010 and, in January 2011, filed a family offense petition against the father. Thereafter, in April 2011, the father filed a modification petition and, in October 2012, filed a violation petition contending, among other things, that the mother was denying him telephone access to the child and had failed to secure counseling for the child. In the interim, beginning in November 2011 and ending in August 2012, Family Court conducted a lengthy hearing as to the parties' respective modification petitions and the mother's family offense petition. Thereafter, by separate orders entered December 14, 2012, Family Court, among other things, awarded the mother sole legal and physical custody of the child with supervised visitation to the father, granted an order of protection in favor of the mother based upon the father's commission of the family offense of harassment in the second degree and, sua sponte, dismissed the father's violation petition. Additionally, by order entered December 21, 2012, Family Court denied the father's request for counsel fees. These appeals by the father ensued.

Initially, we have no quarrel with Family Court's decision to award sole legal and physical custody of the child to the mother. Although the mother's modification petition could have been drafted with greater clarity, she clearly testified at the fact-finding hearing that she was seeking sole legal and physical custody of the child. Hence, we are satisfied that, "despite the [arguable] absence of a petition definitively seeking sole custody . . .[,] the [father] was clearly on notice that both legal and residential custody were at issue" (Matter of Kowatch v Johnson, 68 AD3d 1493, 1495 [2009], lv denied 14 NY3d 704 [2010] [internal quotation marks and citation omitted]; accord Matter of Mahoney v Regan, 100 AD3d 1237, 1238 [2012], lv denied 20 NY3d 859 [2013]; see Matter of Heintz v Heintz, 28 AD3d 1154, 1155 [2006]; compare Matter of Hirtz v Hirtz, 108 AD3d 712, 714-715 [2013]; Matter of Grant v Terry, 104 AD3d 854, 854 [2013]; Matter of Revet v Revet, 90 AD3d 1175, 1176 [2011]; Matter of Joseph A. v Jaimy B., 81 AD3d 1219, 1220 [2011]; Matter of Terry I. v Barbara H., 69 AD3d 1146, 1149 [2010]; Matter of Adams v Bracci, 61 AD3d 1065, 1067 [2009], lv denied 12 NY3d 712 [2009]) — particularly in view of the fact that he had filed his own modification petition, thereby placing the issue of custody squarely before Family Court.

Turning to the merits, "[a] parent seeking to modify an existing custody order bears the burden of demonstrating a sufficient change in circumstances since the entry of the prior order to warrant modification thereof in the child's best interests" (Matter of Bailey v Blair, 127 AD3d 1274, 1275 [2015] [internal quotation marks, brackets and citations omitted]; accord Matter of Dornburgh v Yearry, 124 AD3d 949, 950 [2015]). Here, there is no question that the parties' relationship has deteriorated to the point where they no longer are able to work together in a cooperative fashion for the sake of their child's welfare, and the case law makes clear that discord of this magnitude constitutes a sufficient change in circumstances to warrant a best interests inquiry (see Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1348 [2014], lv dismissed and denied 24 NY3d 937 [2014]; Matter of Sonley v Sonley, 115 AD3d 1071, 1072 [2014]; Matter of Virginia C. v Donald C., 114 AD3d 1032, 1033 [2014]). In resolving that inquiry, a court must consider a number of factors, including each "parent's past

performance, relative fitness, ability to guide and provide for the child['s] overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Matter of Lawrence v Kowatch, 119 AD3d 1004, 1005 [2014] [internal quotation marks and citations omitted]; see Matter of Bailey v Blair, 127 AD3d at 1275-1276; Matter of Joshua UU. v Martha VV., 118 AD3d 1051, 1052 [2014]). Upon review, "Family Court's findings and credibility determinations are accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Gilbert v Gilbert, 128 AD3d 1286, 1287 [2015] [internal quotation marks and citations omitted]; see Matter of Bailey v Blair, 127 AD3d at 1276).

Here, Family Court authored a well-reasoned decision wherein it set forth — in substantial detail — the father's documented efforts to, among other things, denigrate the mother and undermine her role in the child's life, as well as the father's consistent inability to place his child's needs ahead of his own. Without belaboring the point, suffice it to say that the record contains ample support for Family Court's findings in this regard, including the report authored by and testimony adduced from Elizabeth Schockmel, the clinical and forensic psychologist who examined the parties and the child. In her written evaluation, Schockmel noted that, during the course of her interviews with the father, he consistently displayed a "tone of superiority" and devoted significant time to "belittling and devaluing" the mother. Schockmel offered similar testimony at trial, stating that the father expressed the belief that he was the only parent that the child needed and was "exceedingly focused on convincing [the child] that his life with his mother was not good, that his life in Albany [County] was not good, and that for him to be a happy and healthy little boy[,] he needed to be back in [Onondaga County] with [his father]."

As for the parties' respective parenting abilities and priorities, Schockmel opined that the mother's primary focus was to achieve some level of "peace and harmony" in the child's life and that she possessed a "genuine[] desire[] for the stress and conflict in [the child's] life to decrease." Schockmel further testified that, despite all that had transpired, the mother

recognized the importance of the father's presence in the child's life and "still [was willing to] work to have [the child] . . . have regular time with his father." The father, on the other hand, was, in Schockmel's view, far more concerned with having control over the child than he was in reaching a resolution that would be in the child's best interests – a conclusion borne out by the father's statement that he "would have nothing to do with [the child]" if the child was allowed to remain in Albany County in the custody of the mother. As for the father's ability to foster a meaningful relationship between the child and his mother, Schockmel recounted the father's stated desire to pay someone $10,000 to marry the mother – together with an additional $5,000 per year for each year that such marriage continued – as "it would be worth it to have [the mother] out of his hair" and, presumably, out of the child's life.

In addition to the foregoing, the mother testified at length regarding, among other things, the father's willingness to share information and details regarding the parties' custody litigation with the child, his repeated and unfounded reports to local law enforcement officials and child protective services relative to the child's well-being and his attempts to undermine her efforts to obtain mental health counseling for the child – actions that, the record reflects, impacted the child's academic performance and clearly were inconsistent with his overall best interests. Family Court found the mother's testimony to be entirely credible – a determination that we see no reason to disturb – and, based upon our review of the record as a whole, we find that Family Court's decision to award sole legal and physical custody of the child to the mother is supported by a sound and substantial basis in the record. We reach a similar conclusion with regard to Family Court's decision to impose supervised visitation for the father. Again, without reiterating the extensive testimony offered as to the father's controlling demeanor, limited discretion, demonstrated lapses in parental judgment and apparent unwillingness and/or inability "to discharge his . . . parental responsibility properly" (Matter of Raychelle J. v Kendell K., 121 AD3d 1206, 1208 [2014] [internal quotation marks and citations omitted]), we are satisfied that Family Court appropriately determined that supervised visitation was in the child's best interests.

The remaining arguments raised by the father do not warrant extended discussion. Although the underlying order of protection expired by its own terms in December 2014, this aspect of the father's appeal is not moot for two reasons: first, despite the expiration of the order of protection, the finding that the father committed a family offense has "enduring consequences" (Matter of Sasha R. v Alberto A., 127 AD3d 567, 567 [2015]; accord Matter of Ramona A.A. v Juan M.N., 126 AD3d 611, 611 [2015]); additionally, the father also separately appealed from the order finding that he had committed a family offense.

Turning to the merits, and insofar as is relevant here, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same" (Penal Law § 240.26 [1] [emphasis added]; accord Matter of Christina KK. v Kathleen LL., 119 AD3d 1000, 1002 [2014]). "The requisite intent may be inferred from the surrounding circumstances" (Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091 [2013], lv denied 22 NY3d 862 [2014] [citations omitted]), and whether a family offense has been established by "a fair preponderance of the evidence" (Family Ct Act § 832) presents a factual issue for Family Court's resolution (see Matter of Christina KK. v Kathleen LL., 119 AD3d at 1001). Here, the mother testified that, in January 2011, the father telephoned her and, during the course of the ensuing conversation, stated, "I will hunt you down and take care of you, you bitch, you'll be sorry." Contrary to the father's assertion, physical proximity to the victim is not an element of the underlying offense, and this single incident is sufficient to support Family Court's finding that the father committed the family offense of harassment in the second degree (see Matter of Salazar v Melendez, 97 AD3d 754, 755 [2012], lv denied 20 NY3d 852 [2012]).

As for the dismissal of the father's violation petition, even assuming that Family Court erred in dismissing the petition — in part — upon res judicata grounds, we nonetheless are persuaded that such petition was properly dismissed. Finally, upon due consideration of all of the attendant circumstances, we do not find that Family Court abused its discretion in denying

the father's request for counsel fees.  The father's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Garry, J.P., Rose and Lynch, JJ., concur.

ORDERED that the orders are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court