*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 7, 2016                    519232
_____

In the Matter of COLLEEN GG.,
                    Appellant,
        v                                    MEMORANDUM AND ORDER

RICHARD HH.,
                    Respondent.

(And Another Related Proceeding.)
_____


Calendar Date:   November 20, 2015

Before:   Lahtinen, J.P., McCarthy, Egan Jr., Lynch and Clark, JJ.

                    _____


        Lisa K. Miller, McGraw, for appellant.

        Paul G. Madison, Stamford, for respondent.

        Walter J. Burkard, Fayetteville, attorney for the child.

                    _____


Egan Jr., J.

        Appeal from an order of the Family Court of Chenango County (Revoir Jr., J.), entered June 19, 2014, which, among other things, in a proceeding pursuant to Family Ct Act article 6, modified a prior order of custody and visitation.

        Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter (born in 2010).  Pursuant to an order entered upon consent in Saratoga County in August 2012, Family Court (Powers, J.) awarded the parties joint legal custody with primary physical custody to the father and specified periods of unsupervised visitation to the mother.  Difficulties quickly developed, prompting both parties

to seek the assistance of law enforcement and resulting in the filing of numerous violation and/or modification petitions by the mother, as well as the issuance of subsequent orders modifying the mother's visitation with the child. Ultimately, in December 2013, the parties agreed that the then sole remaining violation petition filed by the mother would be treated as a modification petition, and the matter was scheduled for a hearing in April 2014. Pending that hearing, Family Court (Revoir Jr., J.) and the parties agreed that the order entered in August 2012 would remain in effect and that any change in circumstances would be measured from the effective date thereof.

Shortly thereafter, the mother moved by order to show cause seeking temporary custody of the child – claiming that the paternal grandfather had inappropriately touched the child while the child was in her father's care. The scheduled fact-finding hearing ensued, during the course of which the mother filed another violation petition – contending that the father was depriving her of scheduled visitations with the child. Following a lengthy hearing, Family Court, among other things, awarded the father sole legal and physical custody of the child with extended visitation to the mother. The mother now appeals.

Preliminarily, to the extent that the mother now argues that Family Court erred in treating her initial violation petition as a petition to modify the August 2012 order of custody, we need note only that Family Court expressly advised the parties of its decision in this regard well in advance of the fact-finding hearing, and no one – including the mother – raised any objection to that procedure. Indeed, both parties thereafter offered extensive testimony as to the feasibility of the then existing custody order – with the mother taking the position that the joint legal custody arrangement outlined therein no longer was workable. Accordingly, we deem this issue to be unpreserved for our review (see generally Matter of Perry v Surplus, 112 AD3d 1077, 1080 [2013]).

"A parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance;

assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (Matter of Menhennett v Bixby, 132 AD3d 1177, 1179 [2015] [citations omitted]; accord Matter of Gerber v Gerber, 133 AD3d 1133, 1136 [2015]).[1]  Evidence that the parties' relationship has deteriorated to the point where they are incapable of working together in a cooperative fashion for the good of their child will be sufficient to establish the requisite change in circumstances (see Matter of Schlegel v Kropf, 132 AD3d 1181, 1182 [2015]; Matter of Zahuranec v Zahuranec, 132 AD3d 1175, 1176 [2015]; Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2015]).  Without recounting the extensive testimony on this point, suffice it to say that the record as a whole reflects a level of hostility and mutual distrust between the parties that precludes any form of joint decision making.  Accordingly, we have no quarrel with Family Court's finding that joint custody simply is not feasible here.

As to the award of primary physical custody, Family Court was faced with the difficult task of choosing between two loving but less than exemplary parents.  Although the parties both were employed at the time of the hearing, had secured appropriate housing and were possessed of sufficient resources to meet the child's basic needs, they also had a long-standing history of routinely involving law enforcement officials or child protective services in their custody dispute.  While such intervention purportedly was sought on an as-needed basis in an effort to safeguard the child's best interests, the frequency with which the mother and the father chose to involve third parties — including school officials and medical providers — in these matters suggests a calculated effort on the part of each to gain a tactical advantage over the other.  Indeed, Family Court expressly found that each parent embellished his or her side of the story, noting the mother's tendency toward "drama" and

---

[1]  Although Family Court treated this as a "hybrid" initial custody determination and modification proceeding, we will apply the change in circumstances analysis applicable to an application to modify a prior order of custody.

expressing considerable doubt that the father's "calm, cool and collected" bearing during his testimony at the hearing was at all reflective of his demeanor when interacting with the mother. Family Court's findings in this regard are amply supported by the record, and our independent review thereof raises serious concerns regarding the father's willingness to foster a meaningful relationship between the child and the mother and to follow the visitation schedule fashioned by the court.

All of that said, the fact remains that the child has consistently resided in the father's home in Chenango County since shortly after her birth – a home where she has contact with her half sibling and her paternal grandmother is available to assist in her care. The mother, who resides in Onondaga County, has no family nearby and is dependent upon public transportation.[2] Additionally, although the mother had completed both inpatient and outpatient rehabilitation programs and was actively engaged in recovery at the time of the hearing, she had a history of alcohol abuse and, by her own admission, had relapsed on four or five occasions between October 2012 and December 2012 – culminating in a suicide attempt in January 2013.[3] While the record contains conflicting proof as to the impact of the mother's alcoholism upon the child,[4] "according due

---

[2] At the time of the hearing, the mother remained on probation following her felony conviction of driving while intoxicated, as a result of which she did not possess a valid driver's license.

[3] The mother denied that she was trying to kill herself on this occasion, stating instead that she consumed sleeping pills and alcohol in an attempt to get into rehab.

[4] The child admittedly had alcohol in her system at her birth and, although no medical proof was adduced on this point, the father insists that the child suffers from fetal alcohol syndrome. The mother, noting that the child "tested out" of early childhood intervention services, contends that the father is pushing this diagnosis in an effort to portray her in an unfavorable light and "label" their child. Family Court, while

deference to Family Court's factual findings and credibility determinations" (Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1104 [2015] [internal quotation marks and citations omitted]) and upon consideration of all of the relevant factors (see Matter of Andrea CC. v Eric DD., 132 AD3d 1028, 1029 [2015]), including the need to provide some measure of stability for the young child, we cannot say that Family Court's decision to award primary physical custody to the father lacks a sound and substantial basis in the record.  Recognizing that a child's best interests "generally lie with a meaningful relationship with both parents" (Matter of Culver v Culver, 82 AD3d 1296, 1297 [2011] [internal quotation marks and citation omitted], appeal dismissed 16 NY3d 884 [2011], lv denied 17 NY3d 710 [2011]), Family Court fashioned a detailed and expansive visitation schedule for the mother — one that affords the mother ample opportunity to build a strong relationship with her child and one to which the father would be well advised to adhere.

        As a final matter, although both the mother and the attorney for the child upon appeal fault Family Court for failing to conduct a Lincoln hearing in this matter, the record reflects that no request was made and no corresponding objection was lodged at the time of the underlying hearing.  Accordingly, this issue is unpreserved for our review (see Matter of Baxter v Perico, 288 AD2d 717, 717-718 [2001]).  More to the point, "although Lincoln hearings are preferable, they are not mandatory" (Matter of Battin v Battin, 130 AD3d 1265, 1266 [2015]) and, given the child's young age, we cannot say that Family Court abused its discretion in electing to forgo such a hearing in these matters (see Matter of Cormier v Clarke, 107 AD3d 1410, 1411 [2013], lvs denied 21 NY3d 865 [2013]; Matter of Graves v Stockigt, 79 AD3d 1170, 1171 [2010]).  The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

---

not accepting the father's premise in this regard, nonetheless chastised the mother for failing to consider the possibility that her alcohol consumption during her pregnancy impacted her child's development.

Lahtinen, J.P., McCarthy, Lynch and Clark, JJ., concur.


ORDERED that the order is affirmed, without costs.




ENTER:


Robert D. Mayberger
Clerk of the Court