■ In the Matter of RONALD A. WILLIAMS, Respondent, v KIMBERLY A. ROLF, Now Known as KIMBERLY A. ROLF SEELMAN, Appellant. (Proceeding No. 1.) In the Matter of KIMBERLY A. ROLF, Now Known as KIMBERLY A. ROLF SEELMAN, Appellant, v RONALD A. WILLIAMS, Respondent. (Proceeding No. 2.) (And 14 Other Related Proceedings.) [42 NYS3d 381]—

Mulvey, J. Appeal from an order of the Family Court of Madison County (DiStefano, J.), entered June 19, 2014, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.

Kimberly Rolf (hereinafter the mother) and Ronald Williams (hereinafter the father) are the parents of a child (born in 2004). In February 2012, Family Court entered a custody order that provided for joint custody of the child with the primary residence with the mother, weekly visitation with the father and shared holidays. Two days after the February 2012 order was entered, the mother and the father began to file numerous violation, modification and family offense petitions against each other.

In September 2012, Family Court commenced a fact-finding hearing on the multiple petitions during which the father testified. In August 2013, the hearing had not been completed, and, before the mother was able to cross-examine the father or call witnesses, the father moved by order to show cause to hold the mother in contempt based on repeated violations of the February 2012 order and sought to change the primary physical residence of the child to him. In support of the motion, the father submitted a transcript of a recorded conversation between the mother and the child that appeared to depict the mother telling the child to refuse to visit him and threaten to run away if she was forced to meet the father's paramour. Family Court placed a hold on the fact-finding hearing and commenced a multi-day fact-finding hearing on the father's August 2013 motion. After considering the parties' evidence on the

August 2013 motion, the court issued a decision in June 2014 disposing of all of the petitions between the parties by modifying the February 2012 custody order and granting sole custody of the child to the father with limited, supervised visitation to the mother. The mother now appeals.

Initially, we find that Family Court did not err in disposing of all of the petitions between the parties in its ruling on the August 2013 motion. A party is required to make a timely objection at trial in order to preserve the matter for appellate review (*see Matter of Borggreen v Borggreen*, 13 AD3d 756, 757 [2004]; *Matter of Gordon L. v Michelle M.*, 296 AD2d 628, 630 [2002]). The first day of the hearing on the August 2013 motion, the mother's counsel stated that he had no objection to the petitions being tried at the same time as the August 2013 motion, admitting that they involved "very similar issues." Family Court, thereafter, told the parties it decided to combine the proceedings, and the mother's counsel failed to object. Despite this agreement, at the continuation of the hearing, the mother's counsel asked Family Court if the fact-finding hearing was going to continue after the conclusion of the hearing on the August 2013 motion, because he wanted to know if he should be prepared to call all of his witnesses. The court advised the mother's counsel that he should be prepared to present "[w]hatever you believe would be relevant to these issues and a finding of a willful violation or a finding of a violation and any determination that could be made out of that." The court further stated, "This is an enforcement petition, however, [and] in an enforcement petition, if there is such a finding that there is a violation, and if that finding warrants a change in custody, then you should be prepared, since that can happen in a violation petition, you should be prepared to present whatever witnesses you believe would be relevant on all the possible issues that are relevant to these proceedings." The mother's counsel again did not object to these instructions and told the court that he "[u]nderstood." Throughout the hearing, the mother's counsel called witnesses, cross-examined the father and entered evidence related to all of the petitions before the court. Thus, the mother was clearly on notice that primary residential custody was at issue (*see Matter of Vanita UU. v Mahender VV.*, 130 AD3d 1161, 1163 [2015], *lv dismissed and denied* 26 NY3d 998, 999 [2015]; *compare Matter of Constantine v Hopkins*, 101 AD3d 1190, 1192 [2012]).

In any event, Family Court has the ability to grant the relief it deems appropriate provided that the relief granted is not drastically different from that which was originally sought by

the parties, the evidence supports such an award and the parties are not prejudiced thereby (*see Matter of Myers v Markey*, 74 AD3d 1344, 1345 [2010]; *compare Matter of Revet v Revet*, 90 AD3d 1175, 1176 [2011]). The mother's contention that she did not have notice that the hearing might be used to determine custody, or that she did not have the opportunity to present evidence on her own behalf, is unpreserved, and, in any event, is controverted by the record (*see Matter of Colleen GG. v Richard HH.*, 135 AD3d 1005, 1006-1007 [2016]; *Matter of Borggreen v Borggreen*, 13 AD3d at 757; *Matter of Gordon L. v Michelle M.*, 296 AD2d at 630).

Although not raised by the parties, before a best interests analysis may occur, Family Court must find that a change in circumstances exists to warrant a modification of a prior order of custody (*see Matter of Ryan v Lewis*, 135 AD3d 1135, 1136 [2016]). "[A]lthough Family Court did not make an express finding with regard to change in circumstances, [this Court] ha[s] the authority to independently review the record to determine whether such circumstances existed" (*Matter of Rohde v Rohde*, 135 AD3d 1011, 1012-1013 [2016]; *see Matter of Clouse v Clouse*, 110 AD3d 1181, 1183 [2013], *lv denied* 22 NY3d 858 [2014]), and "our authority in custody cases is as broad as that of the hearing court" (*Matter of Shokralla v Banks*, 130 AD3d 1263, 1264 [2015] [internal quotation marks and citations omitted]). Family Court found that joint custody was not possible due to "[t]he [m]other's systematic and devious conduct to alienate the child from the [f]ather, spanning more than two years," and that she "has shown no regard for what the effects of her behavior may have on the child." The finding that a joint custody arrangement was no longer feasible is a sufficient change in circumstances to warrant the court to proceed to a best interests analysis (*see Matter of Colleen GG. v Richard HH.*, 135 AD3d at 1007; *Matter of Matthew K. v Beth K.*, 130 AD3d 1272, 1273 [2015]; *Matter of Greene v Robarge*, 104 AD3d 1073, 1075 [2013]).

We turn next to the issues presented by Family Court's treatment of the recording of a conversation between the mother and the child in November 2012. The child had initiated a telephone call to her attorney and the call was answered by the attorney's answering service. After a brief conversation with an answering service employee, the connection was not terminated and the child's ensuing conversation with the mother was inadvertently monitored and recorded by the answering service. The recording was subsequently disclosed to the child's attorney, who then furnished a compact disc of

the recorded conversation to the attorneys for both the mother and the father.* The recording was played at the hearing and received into evidence over the objection of the mother's attorney.

The mother contends that the recording of her conversation with the child should not have been received into evidence because CPLR 4506 bans the admission into evidence of any recorded communication obtained by eavesdropping. Alternatively, the mother contends that the recording was not properly authenticated and, thus, should not have been admitted. "The predicate for admission of tape recordings in evidence is clear and convincing proof that the tapes are genuine and that they have not been altered. Absent such proof, the [witness's] concession that the voice on the tapes is his or hers and that he or she recalls making some of the statements on the tapes does not exclude the possibility of alteration and, therefore, does not sufficiently establish authenticity to make the tapes admissible" (*People v Ely*, 68 NY2d 520, 522 [1986]; *see Grucci v Grucci*, 20 NY3d 893, 897 [2012]). The foundation laid for the introduction of the recording into evidence was the mother's testimony that the telephone call was made by the child using the mother's cell phone, the voices on the recording were hers and the child's, she listened to the recording "[q]uite a few" times and her friend, Amanda Coon, was present when the recording was made. After this testimony, Family Court admitted the recording into evidence. The mother's testimony was insufficient to authenticate the recording because she did not testify as to whether or not the recording was the complete and unaltered conversation between her and the child, and "there was no attempt to offer proof about who recorded the conversation, how it was recorded (e.g., the equipment used) or the chain of custody" (*Grucci v Grucci*, 20 NY3d at 897; *see Matter of Nicole T.*, 178 AD2d 849, 850 [1991]; *compare People v Hampton*, 64 AD3d 872, 875 [2009], *lv denied* 13 NY3d 796 [2009]).

Nevertheless, in our review of the record, even absent the recording, we find that there was a substantial basis for Family Court's award of sole custody to the father. In order to determine whether a modification of a prior custody order is in a child's best interests, Family Court should consider several factors, including "the relative fitness, stability, past perform-

---

* The father furnished a transcript of the recording to Family Court in support of his August 2013 application for an order to show cause when he sought punishment of the mother for contempt "and to change the primary residence of the . . . child."

ance, and home environment of the parents, as well as their ability to guide and nurture the child[ ] and foster a relationship with the other parent" (*Matter of Rohde v Rohde*, 135 AD3d at 1012 [internal quotation marks and citations omitted]; *see Matter of Hill v Dean*, 135 AD3d 990, 991 [2016]). "[E]vidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the child[ ] is so inconsistent with the best interests of the child[ ] as to, per se, raise a strong probability that the offending party is unfit to act as [a] custodial parent" (*Heather B. v Daniel B.*, 125 AD3d 1157, 1160 [2015] [internal quotations marks and citations omitted]; *see Matter of Gerber v Gerber*, 133 AD3d 1133, 1137 [2015], *lv denied* 27 NY3d 902 [2016]; *Matter of Greene v Robarge*, 104 AD3d at 1075).

The father testified that he was denied visitation—or his visitation was delayed—multiple times in July 2013 because the child refused to get into his car. Although the father was not permitted to get out of his car pursuant to the February 2012 order, he testified that the mother was not placed under any such restriction, and that she and her friend sat in their vehicle with the windows closed, parked one spot away, while the child sobbed during the father's attempt to get the child into his car. The father further stated that, when he asked the mother to help him, she said that the child was not her responsibility anymore. The father also testified concerning another visitation transfer and his efforts to get the child into his car while the mother and this same friend sat in their car laughing at the travails the father was encountering. In another instance, the mother refused to let the child out of her car. The father also testified that the last time he had a weekend visitation with the child was on January 16, 2013. The testimony confirmed the mother's consistent lack of understanding of her obligation to foster a healthy and meaningful relationship between the child and the father. Family Court concluded that there was credible evidence presented at the hearing that the mother made ongoing efforts to obstruct the father's relationship with the child, and no evidence was presented to substantiate any concerns about the father's ability to be a good parent.

In assessing the best interests of the child, we grant appropriate deference to Family Court's factual findings (*see Matter of Terwilliger v Jubie*, 84 AD3d 1520, 1521 [2011]), "given its advantageous position to evaluate conflicting testimony and assess the credibility of witnesses" (*Matter of Greene v Robarge*, 104 AD3d at 1076 [citations omitted]). "Family Court's conclu-

sion that the mother engaged in conduct designed to undermine and interfere with the child['s] relationship with the father is amply supported in the record" (*Matter of Greene v Robarge*, 104 AD3d at 1076). The record shows that the mother's testimony was evasive, unresponsive and contradictory to that offered by the father, and, granting due deference to Family Court's credibility determinations, we find her testimony unbelievable (*see id.* at 1076). The court found that the mother had made direct attempts to alienate the child from the father, thereby making her unfit to act as the custodial parent (*see Matter of Rohde v Rohde*, 135 AD3d at 1013). While Family Court articulated the generally recognized factors that go into a best interests analysis, it did not completely articulate its analysis of the evidence, other than to find the father's residence was totally appropriate. However, it is clear from the record as a whole that it found that a change in the child's physical residence was warranted to be in her best interests (*see Matter of Graham v Morrow*, 111 AD3d 1178, 1180 [2013]; *Matter of Ortiz v Winig*, 82 AD3d 1520, 1522 n 2 [2011]). The record also contains proof that the father is able to provide for the child's best interests to a greater extent than the mother (*see Matter of Graham v Morrow*, 111 AD3d at 1179-1180; *Matter of Timothy N. v Gwendolyn N.*, 92 AD3d 1155, 1157 [2012]).

As a final matter, we address the contention that Family Court erred in declining to conduct a *Lincoln* hearing. It is well settled that *Lincoln* hearings are not mandatory (*see e.g. Matter of Stephen G. v Lara H.*, 139 AD3d 1131, 1135 n 3 [2016], *lv denied* 27 NY3d 1187 [2016]). A child's wishes are "informative rather than dispositive" when the record supports a finding that a child has been manipulated by one of his or her parents and, as a result, the child's view of his or her relationship with the other parent is the "product of that manipulation" (*Matter of Gerber v Gerber*, 133 AD3d at 1138-1139 [internal quotation marks and citation omitted]; *see Matter of Virginia C. v Donald C.*, 114 AD3d 1032, 1035 [2014]). Here, the attorney for the child relayed that the child wished to testify during a *Lincoln* hearing. Family Court denied the request as it was concerned that the parties would have undue influence over the child prior to the *Lincoln* hearing. Thereafter, the attorney for the child stated that the child wished to remain with the mother. Giving deference to Family Court's discretion in this area, and acknowledging the likelihood that the child would have been swayed by the extensive proceedings between the parties, we find that the court did not abuse its discretion in declining to hold a *Lincoln* hearing (*see Matter of Gallo v Gallo*, 138 AD3d 1189, 1191 [2016]; *Matter of Merwin v Merwin*, 138 AD3d 1193, 1195 [2016]).

Egan Jr., J.P., Rose, Clark and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.