Hassan v Barakat (2019 NY Slip Op 02933)





Hassan v Barakat


2019 NY Slip Op 02933


Decided on April 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 18, 2019

526409

[*1]HOSSAM S. HASSAN, Appellant,
v
RANIM F. BARAKAT, Defendant.

Calendar Date: January 11, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Aarons, JJ.


The Hoffman Law Firm LLC, Clifton Park (Laura M. Hoffman of counsel), for appellant.
Jo M. Katz, Troy, attorney for the children.



MEMORANDUM AND ORDER
Mulvey, J.
Appeals from an order and judgment of the Supreme Court (McGrath, J.), entered June 6, 2017 and August 14, 2017 in Rensselaer County, ordering, among other things, joint legal custody of the parties' children, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in October 2014. In February 2015, the wife, who was then pregnant with twins, left the marital residence. A few months later, the husband commenced this action for divorce. In June 2015, the wife sought a pendente lite award of support. On July 2, 2015, she gave birth to the parties' twins, a boy and a girl. The following month, Supreme Court (Elliott, J.) entered a temporary custody order awarding the parties joint legal custody, with primary physical custody to the wife and supervised visits for the husband four days per week. On September 11, 2015, the court granted the wife's pendente lite application, awarding her (1) temporary spousal maintenance in the amount of $400 biweekly, retroactive to the original date of service of her application, June 11, 2015, (2) child support in the amount of $200 biweekly, also retroactive to June 11, and (3) counsel fees. The court later amended its decision to reflect the retroactive start date of the husband's child support obligation as July 2, 2015, the date of the children's birth. In December 2015, the court amended the temporary custody order to remove the requirement for supervision of the husband's parenting time.
During the pendency of this action — in September 2015, March 2016 and October 2016 — the wife filed petitions in Family Court alleging that the husband committed family offenses. Those petitions generally resulted in immediate temporary orders of protection that, although they were later vacated, prevented the husband from seeing the children for weeks. Each of those petitions was eventually dismissed.
Following a trial, Supreme Court (McGrath, J.) issued a final order, which, in relevant part, (1) granted the husband a divorce, (2) awarded the parties joint legal custody, (3) awarded the wife primary physical custody and provided the husband with a schedule of unsupervised [*2]parenting time, and (4) ordered the husband to pay child support. The court entered a final judgment of divorce, and the husband now appeals from both the order and the judgment.[FN1]
Supreme Court erred in awarding primary physical custody to the wife. "An initial child custody determination is to be based on the best interests of the child[ren], taking into consideration such factors as the parents' ability to provide a stable home environment for the child[ren], the child[ren]'s wishes, the parents' past performance, relative fitness, ability to guide and provide for the child[ren]'s overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Jeannemarie O. v Richard P., 94 AD3d 1346, 1346 [2012] [internal quotation marks, brackets and citations omitted]; see Funaro v Funaro, 141 AD3d 893, 894 [2016]). Joint custody is preferred and should be ordered if the parents are able to communicate and make decisions cooperatively (see Funaro v Funaro, 141 AD3d at 894).
At the time of trial, the husband lived in an apartment where he had cribs, clothing and the necessary furnishings and supplies for infants. He worked weekdays from 8:00 a.m. to 5:00 p.m. The wife lived in a three-bedroom apartment with the twins, her mother, her brother and her daughter from a previous marriage. The husband purchased and gave the wife cribs, car seats, a stroller and clothing for the twins. The wife was unemployed and was unable to work because she had allowed a lapse in her work permit that was required of her as a person seeking asylum. Although the twins are too young to express their own wishes and, in any event, the position of children or their attorney is not dispositive, the attorney for the children argued before Supreme Court and this Court that custody should be awarded to the husband (see Matter of Connie VV. v Cheryl XX., 156 AD3d 1147, 1150 [2017]).
The wife has raised her older daughter, who was seven years old at the time of trial. That child has not seen her father since the wife removed her from their native Syria in 2013, at a time when the child was approximately three years old and before the wife was divorced from that child's father. The wife has also been the primary caretaker of the twins since their birth, although the present action was pending and the husband was seeking primary custody that entire time. The husband cared for the twins during his parenting time four days per week. He testified regarding the care he provided, including feeding, bathing, changing diapers, playing and putting them down for naps. The wife did not express any concerns with the visits or the twins' safety during the unsupervised visits.
The husband has two sons in Colorado from a previous marriage. Criminal charges were filed against him in Colorado for sexual assault of his two sons based on accusations raised by his ex-wife. He was later charged with intimidating a witness and tampering with a witness for trying to convince his ex-wife to withdraw her allegations. The wife here continues to believe that the husband pleaded guilty to sexually-based crimes, despite the lack of documentary support for that belief. Based on her view of his "history," she insists that her children should not be with the husband. The record establishes that prosecutors deferred prosecution on the charges in Colorado, which involved the husband pleading guilty to intimidating a witness and an added count of violating a protection order and serving five years of probation, after which the plea to intimidating a witness would be vacated and all charges to which he had not pleaded guilty would be dismissed.[FN2]
Supreme Court expressed concern that there was no way to discern the truth regarding the sexual assault charges, and that the husband was convicted for violating an order of protection. In this record, there is no evidence indicating that the husband committed sexual crimes against his sons. He testified that his ex-wife concocted the allegations to support a [*3]divorce action; documents, including DNA test results, appear to buttress this claim. The record also reveals that the husband did not actually violate an order of protection (indeed, it appears that no order of protection existed in favor of the ex-wife), but that he was permitted to plead guilty to that charge — which was not included in any accusatory instrument — as a lesser count. Although Supreme Court found incredible the husband's stated reason for pleading guilty and entering a deferred prosecution agreement rather than risking a trial on all of the charges, the record contains a memo from the husband's Colorado counsel explaining how the criminal charges could have affected the husband's divorce proceedings with his ex-wife, including parenting time with his sons in the future, and that the husband acted on counsel's advice.
As Supreme Court found, the wife admitted that she did not fully comply with the temporary custody order. That order granted joint legal custody, but the wife did not provide the husband with the name of the twins' new pediatrician or inform him of almost any of their doctor visits, despite his requests for that information. She admitted that she did not always bring the twins to the husband for his scheduled parenting time. Indeed, the husband testified that, in addition to many other times, at one point the wife refused to bring the twins to him for an entire month, despite the order providing him with four scheduled visits per week. Supreme Court concluded that "[t]he proof was clear that [the wife] does not believe that she should foster a healthy and meaningful relationship between her children and [the husband]. Quite to the contrary, [the wife] believed her children would be better off if they never saw their father," as she had directly testified. The court further concluded that the wife "acted on this belief by not fully complying with [the] temporary order of custody and repeatedly filing petitions in Family Court with either inaccurate or false statements," in furtherance of her goal of preventing the husband from seeing the twins. On the other hand, the husband testified that it was important for the children to have a relationship with both of their parents, and he would encourage their relationship with the wife.
Although the assessment of the children's best interests "is based upon the totality of the circumstances after considering each relevant factor, evidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the children is so inconsistent with the best interests of the children as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent" (Heather B. v Daniel D., 125 AD3d 1157, 1160 [2015] [internal quotation marks and citations omitted]; accord Matter of Williams v Rolf, 144 AD3d 1409, 1413 [2016]; see Matter of Turner v Turner, 260 AD2d 953, 954 [1999]). Considering all the factors, including the wife's desire that the twins have no contact with the husband and her repeated efforts to interfere with or entirely prevent them from having a relationship, we conclude that the children's best interests would be served by an award of primary physical custody to the husband (see Matter of Mark WW. v Jennifer B., 158 AD3d 1013, 1016-1017 [2018]; Matter of Williams v Rolf, 144 AD3d at 1414). Based on the husband's expressed willingness to promote a relationship between the twins and the wife, we conclude that joint legal custody remains appropriate. Due to the passage of time since the trial, we remit for Supreme Court to devise an appropriate schedule of parenting time for the wife.
Supreme Court erred in calculating the amount of retroactive child support owed to the wife as $28,626. The court ordered that child support was payable beginning on June 11, 2015, the date that the wife first requested pendente lite relief. Although she may have been entitled to spousal support from that date, she was not entitled to child support then because the children were not yet born. The right to child support arose on the date of their birth, July 2, 2015. Indeed, the court amended its September 11, 2015 temporary order to acknowledge that July 2 was the correct starting date from which child support should be calculated. Thus, the court incorrectly charged the husband with child support from June 11 through July 2.
Further, in calculating the husband's income as defined under the Child Support Standards Act (see Domestic Relations Law § 240 [1-b] [hereinafter CSSA]), Supreme Court was required to deduct "maintenance actually paid to a spouse not a party to the instant action pursuant to court order" (Domestic Relations Law § 240 [1-b] [b] [5] [vii] [B]; see Matter of Berry v Beltran, 281 AD2d 625, 625 [2001]). Although at the time of trial the husband was no [*4]longer paying maintenance to his ex-wife, the record reflects that he had been paying her $2,500 per month through July 2016. Therefore, the court should have calculated different income levels for the various time periods prior to the judgment.
From July 2, 2015 through July 31, 2016, the husband's salary of $114,365 should be reduced by FICA taxes paid (7.65% of his salary = $8,748), the child support he pays for his two children living in Colorado ($1,261 x 12 months = $15,132), his payments for health and dental insurance for the twins ($3,484 per year), and the maintenance payments to his ex-wife ($2,500 x 12 months = $30,000) (see Domestic Relations Law § 240 [1-b] [b] [5] [vii] [B], [D], [H]). Minus those deductions, the husband's income for CSSA purposes is $57,001. The wife's income for CSSA purposes is $27,853. The combined parental income is $84,854, with the husband's pro rata share equaling 67%. Applying the child support percentage of 25% for two children (see Domestic Relations Law § 240 [1-b] [b] [3] [ii]), the combined child support obligation is $21,214 and the husband's share is $14,213 annually, or $1,184 per month. Hence, for the 13 months from July 2, 2015 through July 31, 2016, the husband's child support obligation was $15,392.
For the period from August 1, 2016 through May 23, 2017 (the date of Supreme Court's order), the only difference in the husband's income for CSSA purposes was that he was no longer paying maintenance to his ex-wife, so he could no longer take the related deduction. His CSSA income for that period was $87,001 ($57,001 + $30,000), the combined parental income was $114,854, the combined child support obligation was $28,714, and his pro rata share was 76%, rendering his child support obligation $21,822 annually, or $1,818 per month. Hence, for the 9.75 months from August 1, 2016 through May 23, 2017, the husband's child support obligation was $17,725. Adding the totals for these two periods ($33,117) and crediting him with the $8,800 he paid in child support pursuant to the pendente lite order ($200 biweekly for the 88 weeks from September 11, 2015 through May 23, 2017), the total amount that the husband owed in retroactive child support was $24,317.
Finally, although the husband contends that he is entitled to a credit for money that he deposited into the parties' joint bank account to which the wife had access, "[g]enerally, voluntary payments made by a parent for the benefit of his or her children may not be credited against amounts due pursuant to a judgment of divorce" (McKay v Groesbeck, 117 AD3d 810, 811 [2014]; see Horne v Horne, 22 NY2d 219, 224 [1968]).
Lynch, J.P., Clark, Devine and Aarons, JJ., concur.
ORDERED that the appeal from the order is dismissed, without costs.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded defendant primary physical custody of the children and set the amount of retroactive child support; award primary physical custody of the children to plaintiff, reduce the amount of retroactive child support owed by plaintiff to $24,317 and matter remitted to the Supreme Court to devise a schedule of parenting time for defendant; and, as so modified, affirmed.



Footnotes

Footnote 1: Although the entry of the judgment of divorce requires dismissal of the appeal from the intermediate order, our review of the judgment includes any issues raised in relation to that order (see CPLR 5501 [a] [1]; Armstrong v Armstrong, 72 AD3d 1409, 1410 n 1 [2010]).

Footnote 2: Counsel informed this Court at oral argument that the husband completed his probation in 2018 and all charges have been dismissed except for the misdemeanor of violating a protection order.