Matter of Lonny C v Elizabeth C. (2020 NY Slip Op 04620)





Matter of Lonny C v Elizabeth C.


2020 NY Slip Op 04620


Decided on August 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 20, 2020

528450

[*1]In the Matter of Lonny C., Appellant,
v
Elizabeth C., Respondent.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


Thomas F. Garner, Middleburgh, for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Michael S. Sinicki of counsel), for respondent.
Larisa Obolensky, Delhi, attorney for the children.



Clark, J.
Appeals from two orders of the Family Court of Delaware County (Rosa, J.), entered August 8, 2018 and September 14, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two daughters (born in 2012 and 2014). The father and the mother agreed — in a settlement agreement that was merged, but not incorporated into their judgment of divorce — that they would share joint legal custody of the children and that the mother would have primary physical custody, subject to the father's substantial parenting time schedule. Pursuant to the settlement agreement, the mother is required to "maintain a residence for the children within a radius of forty (40) miles from Deposit, New York or twenty (20) miles from the [c]hildren's [s]chool . . . and cannot relocate outside of th[o]se radii without the advance written consent of the [f]ather." The agreement provides that, if the mother relocates outside of that restriction, then "primary custody of the [c]hildren shall be with the [f]ather until a suitable custody schedule can be arranged."
In October 2017, based upon changes to her employment situation, the mother sought to relocate with the children to Summit, New Jersey, where the children's maternal grandparents reside. Following a comprehensive fact-finding hearing in February 2018, at which numerous witnesses testified, Family Court dismissed the mother's relocation petition, finding that the five-hour round trip from the mother's proposed home to the father's home might negatively affect the children's relationship with the father and their paternal relatives.
Thereafter, in May 2018, asserting that she was complying with the geographical restriction set forth in their settlement agreement, the mother moved to Clarks Summit, Pennsylvania, over the father's objections. The father commenced this modification proceeding, alleging that the mother had exceeded the 40-mile geographical limit and seeking primary physical custody of the children. Family Court promptly held a fact-finding hearing on the limited issue of whether the mother could enroll the children in school in Clarks Summit, pending a final determination of the father's modification petition. At that hearing, the parties hotly contested the issue of whether the mother had complied with the 40-mile geographical restriction, with each party offering different interpretations of the provision and presenting evidence to support their adverse positions. The mother asserted that the agreement required her to stay within 40 miles of Deposit and that she had chosen Clarks Summit by dropping a pin on Google Earth and drawing a 40-mile radius from Deposit. The father asserted that the mother's residence had to be within 40 miles of his residence and that the mother's move had exceeded this mileage.
In a decision and order entered on August 8, 2018, Family Court recognized the ambiguity in the disputed provision, but rejected the father's interpretation, noting that the provision required the mother to maintain a residence "within a radius of forty (40) miles from Deposit," not from the father's residence (emphasis added).[FN1] Taking judicial notice that it is approximately 39 miles from the boundary of the Town of Deposit in Delaware County to the boundary of Clarks Summit, Family Court found that the mother had complied with the geographical restriction and, thus, permitted her to enroll the children in school in Clarks Summit.
Roughly three weeks later, on August 31, 2018, Family Court conducted a fact-finding hearing on the father's modification petition, as well as a Lincoln hearing. The parties also agreed to incorporate the testimony taken during the February 2018 fact-finding hearing held on the mother's unsuccessful relocation petition. At no point during the August 31, 2018 fact-finding hearing did the father or the attorney for the children object to Family Court having taken judicial notice of the mileage from the boundary of the Town of Deposit to the boundary of Clarks Summit or seek an explanation from Family Court as to how it reached that calculation. In a decision and order entered on September 14, 2018, Family Court found that, although there had been a change in circumstances, a modification of custody was not in the best interests of the children. The father appeals from the August 2018 and September 2018 orders.[FN2]
The father, joined by the attorney for the children, argues that Family Court committed reversible error by interpreting the settlement agreement as requiring a boundary-to-boundary measurement, by taking judicial notice that it is approximately 39 miles from the boundary of the Town of Deposit to the boundary of Clarks Summit and by relying on this judicially noticed finding to determine that the mother's move to Clarks Summit fell within the 40-mile radius contemplated by the settlement agreement.[FN3] However, even if Family Court erred in this regard, any such error would not require reversal of Family Court's determination to deny the father's modification petition.
Significantly, the settlement agreement provides that, should the mother relocate outside of the 40-mile limit, "primary custody of the [c]hildren shall be with the [f]ather until a suitable custody schedule can be arranged" (emphasis added). Under the terms of this provision, the father was not permanently entitled to primary physical custody of the children following a move by the mother outside of the 40-mile radius. Rather, the provision contemplates a further determination of custody and parenting time, a determination that is based on the best interests of the children (see Friederwitzer v Friederwitzer, 55 NY2d 89, 94-95 [1982]; Matter of Neeley v Ferris, 63 AD3d 1258, 1260 [2009]). In assessing which custodial arrangement will serve the best interests of the children, courts consider a variety of factors, including the parents' relative fitness, stability and past performances, the ability of each parent to provide for the children's overall well-being and each parent's respective willingness to foster a relationship with the other parent (see Matter of Joseph H. v Elizabeth I., 159 AD3d 1067, 1068 [2018]; Matter of Vanita UU. v Mahender VV., 130 AD3d 1161, 1163 [2015], appeal dismissed and lv denied 26 NY3d 998 [2015]).
Here, Family Court engaged in the proper best interests analysis [FN4] and, in a thoughtful and well-reasoned decision, determined that continuing primary physical custody with the mother was in the best interests of the children. As Family Court found, the mother desires to live closer to the children's maternal grandparents and to set down roots in an affordable community following the parties' divorce, while the father is a deeply entrenched member of the community in Deposit, living and working on a four-generation family farm. It is apparent from the record that the mother and the father are loving, attentive and capable parents, both of whom provide stable, safe and nurturing home environments and want to spend as much time as possible with the children.
However, as Family Court noted, the "vast majority" of the testimony centered around the wants of the father and the mother and "how inconvenient" the mother's move was for the father. Although the travel time between the parties increased, little proof was presented to demonstrate that a change in primary physical custody would be in the best interests of the children. Indeed, as Family Court stated, the father did not come forward with proof that the children would attend "better schools, have access to better health care, etc. or have more opportunities if there were to be a change in residential custody" from the mother to the father. Family Court reasonably concluded that the father's substantial amount of parenting time would not be diminished by the mother's move, even though additional effort would likely be required from the father and the mother. The court further emphasized that the maternal grandmother has provided child care for most of the children's lives and that maintaining primary physical custody with the mother would allow the children to enjoy the continuity of that arrangement. According deference to Family Court's credibility and factual determinations, and upon consideration of the record as a whole, a sound and substantial basis exists in the record to support Family Court's conclusion that the best interests of the children are served by a continuation of primary physical custody with the mother (see Matter of LeVar P. v Sherry Q., 181 AD3d 1008, 1010 [2020]; Matter of Barrows v Sherwood, 138 AD3d 1195, 1197 [2016]). As such, we affirm Family Court's September 2018 order, notwithstanding any potential error in the August 2018 order.
Garry, P.J., Aarons and Mulvey, JJ., concur.
Colangelo, J. (concurring in part and dissenting in part).
I agree that the appeal from Family Court's August 2018 order must be dismissed, but I respectfully disagree with the majority's decision to affirm the court's September 2018 order.
In my view, Family Court erred in taking judicial notice of the distance between Deposit in Delaware County and Clarks Summit, Pennsylvania without specifying the basis for its notice or affording the parties an opportunity to challenge such basis. Due to the significant impact that such error had on the proceedings, reversal and remittur for a hearing to resolve the ambiguity in the parties' settlement agreement and other proceedings that thereafter may be necessary is required.
Although it is well settled that "'a court may take judicial notice of facts which are capable of immediate and accurate determination by resort to easily accessible sources of undisputable accuracy'" (Hamilton v Miller, 23 NY3d 592, 603 [2014], quoting People v Jones, 73 NY2d 427, 431 [1989]), judicial notice of a fact is improper when it is "from a hearsay source or from unidentifiable or nonindisputable sources outside the record or at a time subsequent to the close of testimony" (People v Jones, 73 NY2d at 432; see CRG at Arnot Mall, Inc. v Feehan, 177 AD3d 1135, 1137 [2019] [stating that judicial notice of a fact may not be taken when such fact is neither of common knowledge nor determinable by resort to sources of indisputable accuracy]). Fundamental fairness thus dictates that a court, before it takes judicial notice of a fact, provide the parties with the basis for its notice and "afford the parties the opportunity to be heard as to the propriety of taking judicial notice in the particular instance" (Brown v Muniz, 61 AD3d 526, 528 [2009], lv denied 13 NY3d 715 [2010] [internal quotation marks and citation omitted]). Otherwise, the determination of whether such fact is or is not "of common knowledge or determinable by resort to sources of indisputable accuracy" cannot be properly tested or reviewed (Matter of Crater Club v Adirondack Park Agency, 86 AD2d 714, 715 [1982] [internal quotation marks, ellipsis and citation omitted], affd 57 NY2d 990 [1982]; see CRG at Arnot Mall, Inc. v Feehan, 177 AD3d at 1137).
Here, Family Court never disclosed the basis for its 39-mile calculation, and it announced that it was taking judicial notice of that "fact" after testimony had concluded and only in the context of its written decision. As such, the parties never had an opportunity to be heard on this issue or dispute the basis for such judicially noticed finding. Nor does the record reflect that Family Court had a factual basis for its conclusion that the relocation provision of the agreement — which the court itself recognized as ambiguous — required that the 40-mile radius be measured between the outermost borders of Deposit and Clarks Summit, rather than from the parties' respective residences or some other location, particularly since the language of the agreement requires the mother's residence for the children, and not the boundary line of Clarks Summit, to be within a 40-mile radius from an undetermined location in Deposit. Indeed, the testimony of both parties contradicts the court's interpretation; the father would have measured the 40-mile radius from his home and the mother from the center of Deposit rather than its outer limits. Given the parties' competing and plausible interpretations of the agreement's operative and ambiguous provision as to where in Deposit the 40-mile radius should be measured, resort to extrinsic evidence to assist in the court's interpretation of the agreement was called for but apparently ignored by the court (see Kolbe v Tibbetts, 22 NY3d 344, 355 [2013]; Baff v Board of Educ. of the Fonda-Fultonville Cent. Sch. Dist, 169 AD3d 1322, 1323 [2015]; Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d 1047, 1049 [2014]).
In light of the foregoing, Family Court's threshold determination that the mother's relocation was in conformity with the parties' agreement lacks a sound and substantial basis in the record. In my view, and contrary to the position taken by the majority, the court's error requires reversal of the September 2018 order to dismiss the father's modification petition and continue the mother's primary residential custody. The best interests analysis in which the court engaged was premised on the court's error and — perhaps improperly — placed the burden on the father to prove that a change in custody was in the best interests of the children. As Family Court stated, "[v]ery little proof was offered about how a change in residential custody would be in the children's best interests. No proof was offered that the children would go to better schools, have access to better healthcare, etc. or have more opportunities if there were to be a change in residential custody. No proof was offered that the children were in any danger or otherwise at risk in Clarks Summit" (emphasis added). Since Family Court ruled that the mother's move was consistent with the agreement's requirements, it did not address the consequences to a custody decision of a move greater in distance than allowed for by the agreement. The mother's move may well have exceeded the permissible radii under the agreement and, under that circumstance, the burden would be properly placed on the parent seeking to relocate — the mother — which might lead to a different custody determination than the decision made by Family Court. "The parent seeking to relocate bears the burden of demonstrating, by a preponderance of the evidence, that the proposed relocation is in the child[ren]'s best interests" (Matter of Kristen MM. v Christopher LL., 182 AD3d 658, 660 [2020] [internal quotation marks and citations omitted]). Thus, the record does not support the majority view that Family Court "engaged in the proper bests interests analysis." Accordingly, I would reverse the September 12, 2018 order and remit the matter to Family Court for further proceedings.
ORDERED that the appeal from the order entered August 8, 2018 is dismissed, without costs.
ORDERED that the order entered September 14, 2018 is affirmed, without costs.



Footnotes

Footnote 1: Family Court also noted that the provision did not "differentiate between the Village of Deposit or the Town of Deposit."

Footnote 2: An appeal as of right does not lie from the nonfinal August 2018 order and, thus, the father's appeal from that order must be dismissed (see Family Ct Act § 1112 [a]; Matter of O'Brien v Rutland, 180 AD3d 1183, 1183 n 2 [2020]). Nevertheless, the father's appeal from the September 2018 final order brings up for review the issues raised on appeal from the August 2018 nonfinal order (see Matter of O'Brien v Rutland, 180 AD3d at 1183 n 2; Matter of Kristie GG. v Sean GG., 168 AD3d 25, 27 n 1 [2018]).

Footnote 3: Contrary to their assertions, the father and the attorney for the children had ample opportunity at the August 31, 2018 fact-finding hearing to object to Family Court having taken judicial notice of the mileage from the boundary of the Town of Deposit to the boundary of Clarks Summit and to seek an explanation as to the basis for that determination.

Footnote 4: The dissent appears to be under the mistaken impression that the petition pending before Family Court was a relocation petition brought by the mother. It was not. Rather, the sole petition before Family Court was the father's modification petition seeking a change in physical custody. Thus, contrary to the dissent's view, the father — as the party seeking the modification — bore the burden of demonstrating that a modification of the prior order was in the children's best interests (see e.g. Matter of William DD. v Amanda CC., 162 AD3d 1253, 1254 [2018]; Matter of Perry v Leblanc, 158 AD3d 1025, 1026 [2018]; Matter of Smith v McMiller, 149 AD3d 1186, 1187 [2017]).