*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 7, 2016                    517721
                                                         518767
_____

In the Matter of ANDREW HILL,
                    Appellant,

        v                                     MEMORANDUM AND ORDER

ASHLEY DEAN,
                    Respondent.

(And Four Other Related Proceedings.)
_____

Calendar Date:  November 17, 2015

Before:  Lahtinen, J.P., Garry, Rose, Lynch and Devine, JJ.

                    _____

        Michelle I. Rosien, Philmont, for appellant.

        Allen E. Stone, Vestal, for respondent.

        Margaret McCarthy, Ithaca, attorney for the child.

                    _____

Garry, J.

        Appeals (1) from an order of the Family Court of Chemung
County (Brockway, J.), entered September 20, 2013, which, among
other things, dismissed petitioner's application, in a proceeding
pursuant to Family Ct Act article 6, for custody of the parties'
child, and (2) from an order of said court, entered March 24,
2014, which, among other things, in a proceeding pursuant to
Family Ct Act article 6, granted respondent's motion to dismiss
the petition.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the parents of a son (born in 2011).

The parties lived together from July 2011 until January 2012, when the mother moved with the child to North Carolina without advising the father. Upon reaching North Carolina, the mother obtained an order of protection against the father. The father commenced a custody proceeding in January 2012 and the mother cross-petitioned for custody. Family Court awarded temporary legal and physical custody to the father. In September 2013, following a fact-finding hearing, the court dismissed the father's custody petition and granted the mother's cross petition, awarding sole legal and physical custody of the child to the mother and providing scheduled parenting time to the father. The father petitioned to modify that order in October 2013, and Family Court conducted a hearing in March 2014. The mother moved to dismiss the modification petition at the close of the father's proof, and the court granted the motion. The father appeals from the order granting the mother's cross petition for custody and from the order dismissing his modification petition.

As an initial matter, the record does not support the father's contention that Family Court's custody determination was improperly based upon extrajudicial information in the form of the findings made by the North Carolina court that granted the order of protection. Contrary to the father's claim that the findings were not admitted into evidence, they were included in an audio recording of the North Carolina proceeding that was admitted with the consent of all parties. Moreover, Family Court neither substituted the North Carolina findings for its own nor relied upon them as the premise for its custody determination. Instead, the court referenced the North Carolina findings as part of its preliminary description of the matter's procedural history, and based its custody determination upon a subsequent, separate discussion of the testimony and evidence adduced during the fact-finding hearing, as well as the testimony taken in North Carolina. The court's brief footnote referencing allegations made by the father's ex-wife in a separate custody proceeding does not appear to have served as a basis for the determination. There is no record evidence supporting the father's claim that Family Court was biased.

Turning to the substance of the custody determination, Family Court correctly noted that, despite the mother's relocation to North Carolina, strict application of the factors cited in Matter of Tropea v Tropea (87 NY2d 727 [1996]) was not required as there had not been a prior custody award (see Ostrander v McCain, 68 AD3d 1480, 1481 [2009]; Furman v Furman, 298 AD2d 627, 628-629 [2002], lv dismissed and denied 99 NY2d 575 [2003]).  An initial determination of the best interests of the child is premised upon consideration of such factors as "the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (Matter of Varner v Glass, 130 AD3d 1215, 1216 [2015] [internal quotation marks and citations omitted]).  A parent's decision to move to a distant location and the effect of any alleged domestic violence are significant considerations that must be taken into account in determining a child's best interests (see Domestic Relations Law § 240 [1] [a]; Matter of Bush v Lopez, 125 AD3d 1150, 1150 [2015]; Matter of Melissa K. v Brian K., 72 AD3d 1129, 1131 [2010]).

Here, Family Court determined that the mother's decision to relocate to North Carolina was "closely intertwined" with her allegations of domestic violence.  The court credited the mother's testimony that the father was controlling and verbally abusive throughout the relationship, especially after the mother became pregnant.  The mother testified that the father frequently called her insulting and obscene names, isolated her from friends and family, and finally threatened to hit her in the face. Following this threat, the mother became fearful that the father's verbal abuse would escalate to physical violence, and she relocated to North Carolina with the child a few days later. According the appropriate deference to the court's credibility assessments, the record supports its conclusion that the mother did not relocate to separate the father from the child, but instead acted in good faith to escape the threat of domestic violence and obtain the support of family members residing in North Carolina, including her father, stepmother and siblings (see Matter of Clarke v Boertlein, 82 AD3d 976, 977-978 [2011];

Malcolm v Jurow-Malcolm, 63 AD3d 1254, 1257 [2009]).

Although the father testified that his relationship with the mother was "fine" and that they had no more arguments than any normal couple, Family Court noted that he had testified differently during the North Carolina proceeding, acknowledging that he had threatened to hit the mother on one occasion and had taken out stress and anxiety upon her through verbal abuse throughout the relationship. During that prior proceeding, the father also acknowledged that he had anger issues related to his obsessive compulsive disorder and other mental health issues. The North Carolina protective order included provisions requiring him to remain in counseling, take his prescribed medication and complete anger management and domestic violence programs in New York. Family Court found that the father had violated the order based upon his testimony during the fact-finding hearing that he had failed to comply with these requirements. His testimony that he no longer needed these measures because his symptoms had improved was unsupported by medical proof or other objective evidence (see Matter of Carpenter v La May, 241 AD2d 625, 626 [1997]).

As for the parties' relative fitness, Family Court credited the mother's testimony that she was the child's primary caretaker before she left for North Carolina. The mother testified that when she was at work, the child was cared for by the paternal grandmother, who lived across the road, and that, even when the father was at home, he would leave the child at the grandmother's house until the mother returned. The paternal grandmother also cared for the father's two older children from a previous marriage, who slept at her home and spent most of their time there during the father's periods of parenting time with them.

The father challenged the mother's fitness, contending that the child was injured or placed at risk of injury on several occasions as a result of her alleged inexperience and inattentiveness. However, Family Court found that most of these incidents occurred shortly after the child's birth, that the father and paternal grandmother had elected to criticize the mother's shortcomings rather than to assist her with childcare

and housework during this period, and that no subsequent incidents had occurred as the mother matured and gained experience. We defer to Family Court's credibility determination that the father's witnesses falsified or exaggerated many of their claims about the mother's alleged failings, a finding that was well supported by the record.[1] The court further found that the father and paternal grandmother had sought to build evidence supporting their claims of the mother's inadequacy by repeatedly photographing the child's naked body after visits with the mother and frequently and unnecessarily taking him to the doctor for treatment of rashes and minor injuries that had allegedly occurred in the mother's care. This finding was supported by testimony from the child's doctor, who stated her opinion that many of these visits were not medically necessary and that she eventually discharged the child from her practice because of the high level of conflict between the parents.

As to the suitability of the parties' homes and their ability to provide for the child, the mother had married after moving to North Carolina and, by the time of the fact-finding hearing, resided with her husband in a two-bedroom apartment. The mother and her husband, who was employed as an assistant store manager, had flexible work hours that permitted them to share the care of the child. The mother's wages as a customer associate for a food chain were relatively low at the time of the hearing, but she expected to increase her earnings once she was able to transfer her New York certification as a nurse's aide to North Carolina. The father worked long hours as a bus driver, earning a reported income of $250 weekly, and also operated a separate party and entertainment business on evenings and weekends; this evidence supported Family Court's determination that he was generally unavailable to spend time with the child or provide for his intellectual and emotional development, and that most of the child's care would be provided by the paternal grandmother if he were placed in the father's physical custody.

---

[1] For instance, the paternal grandmother testified that the mother regularly arrived late for visitation exchanges, a claim that was subsequently wholly refuted by documentary evidence.

The testimony revealed that, following the parties' separation, the father unilaterally suspended the mother's visitation, requiring the mother to commence enforcement proceedings, and also tried to prevent her from visiting the child when she was in New York for court appearances until he was court-ordered to allow her to do so.  The father's domineering and verbally abusive behavior toward the mother, his focus on her shortcomings rather than his own, his failure to recognize and address his anger management issues and his efforts to build evidence against her by subjecting the child to unnecessary medical examinations supported the court's determination that if the father were awarded custody, he would continue his past behavior of seeking to alienate the child from the mother rather than supporting and encouraging their relationship (see Matter of Danielle TT. v Michael UU., 90 AD3d 1103, 1103-1104 [2011]). While the placement of the child with the mother in North Carolina separates him from his half siblings in New York, the general preference for keeping siblings together when possible "has become more complicated due to changing family dynamics" (Matter of Tavernia v Bouvia, 12 AD3d 960, 962 [2004]; accord Matter of Bush v Bush, 104 AD3d 1069, 1073 [2013]), and the siblings will have contact during the extended periods of parenting time in New York provided to the father under the custody order.  Although not dispositive, the attorney for the child upon appeal supports Family Court's determination (see Matter of Lawrence v Kowatch, 119 AD3d 1004, 1006 n 2 [2014]). Taken as a whole, the record provides the requisite sound and substantial basis for the court's determination that it was in the child's best interests to award sole legal and physical custody to the mother (see Matter of Claflin v Giamporcaro, 75 AD3d 778, 780 [2010], lv denied 15 NY3d 710 [2010]; Matter of Melissa K. v Brian K., 72 AD3d at 1132; Malcolm v Jurow-Malcolm, 63 AD3d at 1258).

Family Court did not err in dismissing the father's modification petition.  "In any modification proceeding, the threshold issue is whether there has been a change in circumstances since the prior custody order significant enough to warrant a review of the issue of custody to ensure the continued best interests of the child[]" (Matter of Patricia P. v Dana Q.,

106 AD3d 1386, 1386 [2013] [citations omitted]).  Here, the father did not meet this threshold requirement.  The modification petition was filed only a month after the custody order was entered, and its allegations that the child had suffered from injury and neglect while in the mother's care were similar to the father's prior allegations regarding the mother's unfitness that had just been litigated in the custody proceeding, and also with his previous efforts to develop medical evidence against the mother.  The North Carolina child protective authorities had investigated the father's allegations and found them to be unsubstantiated by the time of the modification hearing.  Medical records indicated that the child's injuries could have resulted from normal toddler behavior and he was receiving appropriate medical attention in the mother's care.  Further, the evidence did not support the father's claim that the mother was failing to facilitate his relationship with the child; among other things, he acknowledged during the modification hearing that he and the child communicated almost every day using Skype.  According the appropriate deference to the court's credibility assessments, we agree with the attorney for the child that the father failed to establish the requisite change in circumstances (see Matter of Tyrel v Tyrel, 132 AD3d 1026, 1027 [2015]; Matter of Hamilton v Anderson, 31 AD3d 935, 936 [2006]).

Lahtinen, J.P., Rose, Lynch and Devine, JJ., concur.

ORDERED that the orders are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court