■ In the Matter of SEAN Q., Respondent, v SARAH Q., Appellant. (And Another Related Proceeding.) [67 NYS3d 686]—

Mulvey, J. Appeal from an order of the Family Court of Saratoga County (Jensen, J.), entered November 18, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2010). Pursuant to a 2014 judgment of divorce, they were granted joint legal custody of the child, with the child spending summers and school vacations with the father while residing primarily with the mother. In December 2015, the mother's fiancé returned home to find the mother's home filled with smoke; the mother was passed out in bed and extremely intoxicated, and the then-five-year-old child was rescued after he was found hiding in bed under blankets. In response, the father, who was on active duty in the Army stationed in Washington, flew home as soon as he was approved for leave, and filed an emergency petition for modification of custody in January 2016.* With the mother's permission, the father took the child to Washington and, in March 2016, Family Court granted the father temporary legal and physical custody. While the father had temporary custody, he was given a three-year assignment in Brussels and moved there with the child in August 2016, to which the mother objected. The child has since lived with the father in Brussels.

After a trial, Family Court issued a detailed and well-reasoned decision finding that there had been a change in circumstances since the original custody order had been issued. The court concluded that it was in the child's best interests to award physical custody to the father, with the parties sharing joint legal custody, and allowed the relocation to Brussels. The mother was given extensive summer and vacation parenting time under certain conditions. The mother appeals.

We affirm. The mother argues that she had been the primary parent prior to the December 2015 incident and had provided the child with stability, and that the record does not support

---

* The mother later filed a violation petition alleging that the father's changing work schedule caused instability for the child, among other things, which Family Court ultimately dismissed following the trial on both petitions. As the mother's brief does not address the dismissal of that petition, we deem any related claim to be abandoned (*see Matter of Hempstead v Hyde*, 144 AD3d 1438, 1439 n [2016]).

Family Court's finding that the child's best interests would be served by placing him in the father's custody. We disagree, finding that the record convincingly supports all of the court's findings. Under established law, "[a] parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that . . . warrant[s] the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (*Matter of Woodrow v Arnold*, 149 AD3d 1354, 1356 [2017] [internal quotation marks and citations omitted]). At trial, the parties, the paternal grandparents and the maternal grandmother testified, all of whom Family Court credited except the mother. The court found that the mother had minimized her alcohol use and its effect on the child and that her testimony was inconsistent with the testimony of the other witnesses. We accord great deference to the court's credibility determinations, which are well-supported by the record (*see Matter of Snow v Dunbar*, 147 AD3d 1242, 1243 [2017]; *Matter of Hempstead v Hyde*, 144 AD3d 1438, 1439-1440 [2016]).

The documentary evidence and testimony established that the mother began regularly abusing alcohol in 2015 and admitted to self-medicating, due to sometimes incapacitating mental health problems, by binge drinking while responsible for the child. She was convicted of driving while intoxicated after crashing into parked cars and continued to drive with the child in the car after her license was suspended. After the December 2015 incident, which Family Court rationally concluded had presented a life-threatening situation for the child, the mother was hospitalized and asked the father to take the child to live in Washington, which he did. Given the foregoing, we agree with the court's finding that there had been a change in circumstances (*see Matter of Vincente X. v Tiana Y.*, 154 AD3d 1113, 1114 [2017]; *Matter of Hamilton v Anderson*, 143 AD3d 1086, 1088-1089 [2016]).

We further find that Family Court providently awarded physical custody to the father and permitted the child to relocate with him to Brussels, as the record demonstrates that "modification of the underlying order [was] necessary to ensure the child's continued best interests" (*Matter of Woodrow v Arnold*, 149 AD3d at 1356). With regard to the child's best interests, the court was required to consider, among other factors, "each parent's willingness and ability to foster a positive relationship between the child and the other parent, the need to maintain

stability in the child's life, the parents' respective home environments, the child's needs and the parents' past performance and ability to provide for the child's well-being" (*Matter of Rosenkrans v Rosenkrans,* 154 AD3d 1123, 1124 [2017]). Family Court carefully considered all of the relevant factors, and its concern for the child's safety, well-being and stability while with the mother, and the mother's corresponding minimization of how her conduct adversely affects the child, were well-founded and supported by the evidence. The mother has not had stable and consistent housing, transportation, employment, behavior or health; she has extensively relied upon the grandparents and the father during her periods of instability, ultimately agreeing to the father taking the child across the country to be cared for. Further, the mother did not have a consistent record of attending recommended treatment and counseling for her health problems. While the mother's reliance upon her support system in times of crisis or instability is commendable, it also reflects her periodic inability, for numerous reasons, to safely care for the child independently.

The father, while required to relocate by the Army, has demonstrated his ability and willingness to safely care for the child and all of his needs, providing stability and security. He has secure plans for the child's education and day care, which included the paternal grandmother's move to Brussels to assist with the care of the child. As such, the father met his "burden of establishing, by a preponderance of the credible evidence, that the proposed relocation [to Brussels] would be in the child's best interests" (*Matter of Hoffman v Turco,* 154 AD3d 1136, 1136 [2017]). "In making this best interests determination, Family Court . . . consider[ed, as required,] a variety of factors, including, but not limited to, 'each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements' " (*Matter of Hoffman v Turco,* 154 AD3d at 1136-1137, quoting *Matter of Tropea v Tropea,* 87 NY2d 727, 740-741 [1996] [citation omitted]). Family Court recognized that the parties had coparented cooperatively and had good and loving relationships with the child and that the move would impact the mother's contact with the child, but emphasized that the mother had not opposed the child's distant relocation to

Washington. The court rightfully gave paramount importance to the child's health and well-being in concluding that the relocation was in his best interests, a finding "supported by a sound and substantial basis in the record" (*Matter of Hoffman v Turco*, 154 AD3d at 1137). The remaining contentions raised by the mother have been considered and determined to lack merit.

Egan Jr., J.P., Rose, Devine and Rumsey, JJ., concur. Ordered that the order is affirmed, without costs.