Devine, J.
 

 Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered March 7, 2016, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
 

 Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a son (born in 2013). In November 2014, the parties agreed to an order of custody and visitation for the child that awarded the mother sole legal and primary physical custody and the father specified parenting time. A few weeks into that arrangement, the mother purportedly told the day-care provider for the child’s half sister, “I understand why people hurt or kill their kids out of love. I would never do anything but maybe if I can’t have [the child] no one should.”
 

 The day-care provider became worried and alerted the father to the mother’s statement, prompting the father to commence this custody modification proceeding and obtain temporary sole legal and physical custody of the child. Family Court initially limited the mother to supervised visits with the child but, as concerns about the child’s safety abated, granted her unsupervised visitation. Following an exhaustive fact-finding hearing, Family Court issued a permanent order awarding the father sole legal and physical custody and the mother specified visitation. The mother now appeals.
 

 “As the petitioning party, the father bore ‘the burden of demonstrating first, that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order’ ” (Matter of Jessica AA. v Thomas BB., 151 AD3d 1231, 1231-1232 [2017], quoting Matter of Thomas FF. v Jennifer GG., 143 AD3d 1207, 1208 [2016]; see Matter of Quick v Glass, 151 AD3d 1318, 1319 [2017]). The mother underwent a psychological evaluation in the wake of her troubling statement to the day-care provider that resulted in a clinical psychologist making a “rule-out diagnosis of adjustment disorder,” a “benign” diagnosis that reflected an individual being overwhelmed by events. The evaluating psychologist stressed, however, that he could not make a definite diagnosis due to the fact that the mother had tried to “fake good” on several of the administered tests; as a result, he could not say with certainty whether she did or did not have “a serious mental health disorder.” The mother’s own counselor had a favorable view of her mental state, but the counselor’s testimony also revealed an apparent lack of candor from the mother in their counseling sessions. Moreover, the parties’ ability to communicate regarding the child was bad to begin with but grew worse after the entry of the November 2014 order. This deterioration was reflected in the mother’s acknowledgment that she did not communicate with the father “at all” aside from terse text message exchanges, as well as proof that these exchanges left the father in the dark on issues such as a doctor’s appointment that the mother unilaterally rescheduled. Family Court determined, and we agree, that these developments constituted a change in circumstances since the entry of the November 2014 order that warranted a best interests analysis (see Matter of Dorsey v De’Loache, 150 AD3d 1420, 1421-1422 [2017]; Matter of Garcia v Zinna, 149 AD3d 1185, 1185 [2017]; Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1348 [2014], lv dismissed and denied 24 NY3d 937 [2014]; Matter of Fortner v Benson, 306 AD2d 577, 577-578 [2003]).
 

 A best interests analysis involves the review of factors such as “each parent’s relative fitness and past parenting performance, the duration of the prior custody arrangement, the child’s wishes, the respective home environments, including the existence of domestic violence, and the likelihood of each parent to foster a relationship between the child and the other parent” (Matter of Dorsey v De’Loache, 150 AD3d at 1422 [internal quotation marks and citation omitted]; accord Matter of Kevin F. v Betty E., 154 AD3d 1118, 1120 [2017]). The prior custodial arrangement was not long-standing, and Family Court noted that the home environments of both parents were “at least minimally safe and appropriate for the child.” That being said, Family Court credited testimony that the mother poisoned the once good relationship between the father and the child’s half sister, with one witness describing how the mother said that the half sister had a “right to know” that the father was “a scumbag” and stated her intent to say much the same to the child if she regained custody of him. There was therefore proof to suggest that the mother had been and would likely continue “engaging] in conduct designed to undermine and interfere with the child [⅛] relationship with the father,” which stood in marked contrast to the father’s willingness to overlook the mother’s hostility and afford her additional visitation with the child on occasion (Matter of Greene v Robarge, 104 AD3d 1073, 1076 [2013]; see Matter of Williams v Rolf, 144 AD3d 1409, 1413-1414 [2016]).
 

 We acknowledge the advocacy of the attorney for the child for a joint custodial arrangement, with the mother having physical placement of the child. The foregoing proof nevertheless shows the father to be far more prepared to facilitate a relationship between the child and the noncustodial parent and, according due deference to the credibility determinations of Family Court, we find a sound and substantial basis in the record for its conclusion that the best interests of the child lie in awarding the father sole custody (see Matter of Harlost v Carden, 124 AD3d 968, 968 [2015]; Matter of Greene v Robarge, 104 AD3d at 1077).
 

 McCarthy, J.P., Rose and Rumsey, JJ., concur.
 

 Ordered that the order is affirmed, without costs.