Matter of Brent O. v Lisa P. (2018 NY Slip Op 03187)





Matter of Brent O. v Lisa P.


2018 NY Slip Op 03187


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

524458

[*1]In the Matter of BRENT O., Respondent,
v
LISA P., Appellant.

Calendar Date: March 27, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Poissant, Nichols, Grue, Vanier & Babbie, PC, Malone (Stephen A. Vanier of counsel), for respondent.
Omshanti Parnes, Plattsburgh, attorney for the child.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of St. Lawrence County (Richey, J.), entered January 6, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a daughter (born in 2005). In November 2013, following establishment of the father's paternity, the parties stipulated to an order awarding the mother sole legal and primary physical custody of the child. The order also provided parenting time to the father, who resided in North Carolina, for eight uninterrupted weeks every summer, on
alternating holidays and school breaks and during such other times as the parties agree. The father subsequently moved to Oklahoma and, in November 2015, he commenced this proceeding seeking sole custody of the child. Three supplemental petitions setting forth additional allegations against the mother were thereafter filed by the father in February, March and June 2016. Following a fact-finding hearing and a Lincoln hearing, Family Court awarded sole custody to the father, established a generous visitation schedule for the mother and issued an order of protection prohibiting contact between the child and certain of the mother's relatives. The mother appeals.
"The party petitioning to modify a custody order bears the burden of demonstrating first, that there has been a change in circumstances since the prior order and, then, if such a change [*2]occurred, that the best interests of the child would be served by a modification of that order" (Matter of Kvasny v Sherrick, 155 AD3d 1366, 1366 [2017] [internal quotation marks and citation omitted]; see Matter of Faber v Overbaugh, 156 AD3d 1144, 1145 [2017]). The parties do not dispute that there has been a change in circumstances since the entry of the prior order of custody and, in any event, Family Court's finding in that regard finds ample support in the record. The issue therefore distills to whether the award of sole custody to the father is in the child's best interests, an inquiry that requires examination of such relevant factors as "the home environment of each parent, the relative fitness of the parents, the parents' past performance and ability to provide for the child['s] overall well-being, how faithful each party has been to prior court orders, the child's wishes and the willingness of each parent to foster a positive relationship between the child[] and the other parent" (Matter of Imrie v Lyon, 158 AD3d 1018, 1019 [2018] [internal quotation marks and citations omitted]; see Matter of Kvasny v Sherrick, 155 AD3d at 1367; Matter of Kevin F. v Betty E., 154 AD3d 1118, 1120 [2017]). Given the superior position of Family Court to observe and evaluate the witnesses' testimony, its factual findings and credibility assessments are to be accorded great deference, and we will not disturb its custodial determination if supported by a sound and substantial basis in the record (see Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1039 [2018]; Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [2017]).
It is undisputed that the child has spent nearly her entire life in the care of her mother and that the two enjoy a close relationship. Nevertheless, Family Court carefully considered all of the relevant factors, and its grave concern for the child's well-being and stability while with the mother is well-founded and supported by the evidence. The mother's own testimony established that, since the entry of the prior custody order, she has changed residences several times and moved from one relationship to another with relative alacrity, inviting several of these individuals to spend the night, or longer, at her home. At times, the mother's routine involved shuttling the child back and forth between her residence and that of her on-again, off-again paramour, regardless of whether the two were in a "relationship" and with no apparent consideration as to the disruption this may cause the child. Of particular concern is the mother's conduct in permitting the child to be present at family gatherings with a family member she knew to be a convicted sex offender, as well as her decision to expose the child to a convicted murderer [FN1]. Further, as the mother acknowledged, the child had been subjected to sexual abuse while under her care. The mother's Facebook page, which could be viewed by the public, contained provocative pictures of herself, a number of sexually explicit "picture quotes" and lewd remarks and expletives that she admitted she would not want her children to see. When questioned as to whether she would cease using Facebook if ordered to do so by the court, the mother indicated that she would but that it would be a "hardship." Charitably stated, the mother's choices in this regard reflect a deficiency of reasonable parental judgment and a lack of insight as to the adverse impact that her conduct has upon the child.
Testimony was also presented that the child was failing core classes at school, yet the mother could not name one of the child's teachers. Further, the record is replete with evidence that the mother engaged in a course of conduct designed to alienate the child from the father and [*3]to interfere with the father-daughter relationship. The mother regularly denigrated the father, used derogatory language toward him in the presence of the child and generally demonstrated a lack of respect toward him. During conversations with the father, the mother routinely referred to her on-again, off-again paramour as the child's "father," in one instance proclaiming that the child "loves [the paramour] more" and that this individual "might not be her father by blood, but is her father and always will be." Evidence further established that the mother has consistently thwarted the father's efforts to communicate with the child, requiring the father to install a Skype application on the child's cell phone in order to maintain regular contact with her. She also refused to make arrangements for the father to see the child when he came to New York in February 2006, despite the fact that he had provided the mother with proper and timely notice as required by the prior custody order. On at least one occasion, the mother changed residences with the child without informing the father or providing him with their new phone number, again in violation of the prior order. Family Court properly gave great weight to such persistent interference with the relationship between the father and the child in assessing the mother's overall fitness to act as a custodial parent (see Matter of Faber v Overbaugh, 156 AD3d at 1145-1146; Matter of Williams v Rolf, 144 AD3d 1409, 1413-1414 [2016]; Matter of Greene v Robarge, 104 AD3d 1073, 1075 [2013]).
While the father's relationship with the child has spanned only a few years, and his parenting time with her during that time has been somewhat limited, the evidence overwhelmingly establishes that he is far more willing and able to provide a stable and nurturing environment for the child. The father resides in a single-family home in Oklahoma with his wife of 10 years, who is gainfully employed as an executive for an airline company. Having retired from the United States Army in 2009, the father is able to care for the child whenever she is not in school. He has consistently exercised the parenting time afforded to him under the 2013 order, and has traveled to New York on multiple occasions to avail himself of additional visits with the child. In contrast to the mother, the father permitted the child to have unfettered communication with the mother and has supported, rather than discouraged, that relationship. Further, both the father and his wife testified that they would continue to encourage, as well as finance, frequent trips to New York in order to allow the child to maintain meaningful contact with the mother and the child's half siblings. Although an award of custody to the father would necessarily result in the child's relocation to Oklahoma, upon balancing the Tropea factors (see Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]), we are satisfied that the father met his "burden of establishing, by a preponderance of the credible evidence, that the proposed relocation would be in the child's best interests" (Matter of Hoffman v Turco, 154 AD3d 1136, 1136 [2017] [internal quotation marks and citations omitted]). To that end, the parties stipulated that the area where the father resides has sufficient educational and medical resources to meet the child's needs, and the record fully supports Family Court's conclusion that the child's life would be "enhanced economically, emotionally and educationally by the move" (id. at 1136-1137; see Matter of Hempstead v Hyde, 144 AD3d 1438, 1439 [2016]). While the move would unquestionably impact the mother's contact with the child, Family Court "rightfully gave paramount importance to the child's health and well-being in concluding that the relocation was in [her] best interests, a finding 'supported by a sound and substantial basis in the record'" (Matter of Sean Q. v Sarah Q., 156 AD3d 1173, 1176 [2017], quoting Matter of Hoffman v Turco, 154 AD3d at 1138-1139; see Matter of Perestam v Perestam, 141 AD3d 757, 758-759 [2016]).
Moreover, Family Court's decision reflects that it considered the impact of the separation of the child from her half siblings (see Matter of Emmanuel SS. v Thera SS., 152 AD3d 900, 902 [2017], lv denied 30 NY3d 905 [2017]; Matter of Hill v Dean, 135 AD3d 990, 994 [2016]), but that such separation was outweighed by other factors, particularly the need to provide stability for the child (see Matter of Emmanuel SS. v Thera SS., 152 AD3d at 902; [*4]Robert B. v Linda B., 119 AD3d 1006, 1009 [2014], lv denied 24 NY3d 906 [2014]). Further, the half siblings will have contact with the child during the extended periods of parenting time in New York provided to the mother under the custody order (see Matter of Hill v Dean, 135 AD3d at 994). Although certainly not dispositive, we note that the attorney for the child upon appeal supports Family Court's determination (see id.; Matter of Ildefonso v Brooker, 94 AD3d 1344, 1346 n 2 [2012]). Considering all of the relevant factors and according deference to Family Court's factual findings and credibility assessments, we find a sound and substantial basis in the record for the conclusion that an award of sole custody to the father is in the child's best interests (see Matter of Sean Q. v Sarah Q., 156 AD3d at 1175-1176; Matter of Faber v Overbaugh, 156 AD3d at 1145-1146; Matter of Williams v Rolf, 144 AD3d at 1413-1414; Matter of Hill v Dean, 135 AD3d at 992-994; Matter of Greene v Robarge, 104 AD3d at 1076-1077).
The mother's claim that she received ineffective assistance of counsel is likewise without merit. To successfully maintain such a claim, a party must "demonstrate that he or she was deprived of reasonably competent and, thus, meaningful representation" as a result of his or her lawyer's deficiencies (Matter of Dorsey v De'Loache, 150 AD3d 1420, 1423 [2017] [internal quotation marks and citation omitted]; see Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010 [2018]; Matter of Tracey L. v Corey M., 151 AD3d 1209, 1212 [2017]). Here, counsel called several witnesses on the mother's behalf, elicited testimony favorable to the mother's position, effectively cross-examined the father's witnesses, lodged appropriate and often successful objections and made cogent arguments in favor of maintaining custody with the mother. To the extent that the mother faults counsel for failing to object, on best evidence grounds, to the father's testimony regarding the content of certain text messages exchanged between the father and the mother, she has failed to demonstrate the absence of a strategic basis for counsel's decision in that regard (see Matter of Bennett v Abbey, 141 AD3d 882, 885 [2016]; Matter of Elizabeth HH. v Richard II., 75 AD3d 670, 670-671 [2010]). Nor has the mother demonstrated that the other claimed deficiencies by counsel, even if established, resulted in actual prejudice (see Matter of Jacklynn BB. [Donna CC.], 155 AD3d 1363, 1365 [2017]; Matter of Perry v Render, 107 AD3d 1615, 1616 [2013]; Matter of Lewis v Tomeo, 81 AD3d 1193, 1197 [2011]). Viewed in totality, the record establishes that the mother received meaningful representation (see Matter of Bennett v Abbey, 141 AD3d at 885; Matter of Coleman v Millington, 140 AD3d 1245, 1248 [2016]; Matter of Alexisana PP. [Beverly PP.], 136 AD3d 1170, 1172-1173 [2016]).
To the extent not specifically addressed herein, the mother's remaining contentions have been reviewed and rejected.
Egan Jr., J.P., Lynch, Devine and Clark, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Contrary to the mother's contention, the testimony concerning the criminal histories of these two individuals did not constitute inadmissible hearsay (see Matter of Michael JJ. [Gerald JJ.], 101 AD3d 1288, 1291 [2012], lv denied 20 NY3d 860 [2013]; Matter of Christopher II., 222 AD2d 900, 902 [1995], lv denied 87 NY2d 812 [1996]).