Matter of Mariah K. (Rachael K.--Jay L.) (2018 NY Slip Op 06999)





Matter of Mariah K. (Rachael K.--Jay L.)


2018 NY Slip Op 06999


Decided on October 18, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 18, 2018

524435

[*1]In the Matter of MARIAH K., Alleged to be a Neglected Child. WARREN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent;
and
RACHAEL K., Respondent. JAY L., Appellant. (Proceeding No. 1.)
In the Matter of JAY L., Appellant, RACHAEL K., Respondent. (Proceeding No. 2.)

Calendar Date: September 7, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Devine, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
James B. Lesperance Jr., Warren County Department of Social Services, Lake George, for Warren County Department of Social Services, respondent.
Michelle I. Rosien, Philmont, for Rachael K., respondent.
D. Alan Wrigley Jr., Cambridge, attorney for the child.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from an order of the Family Court of Warren County (Kershko, J.), entered January 20, 2017, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Respondent Rachael K. (hereinafter the mother) and petitioner Jay L. (hereinafter the father) are the parents of a child (born in 2006). Pursuant to a prior order, they shared joint legal custody of the child, with physical custody with the mother and scheduled parenting time for the father. In June 2016, petitioner Warren County Department of Social Services (hereinafter DSS) commenced a neglect proceeding (proceeding No. 1) against the mother alleging, among other things, that she suffered from substance abuse and mental health issues and had engaged in violent disputes with her boyfriend in the child's presence. Petitioner also commenced neglect proceedings against the mother relative to her two other children (born in 2009 and 2016), who are the child's half siblings and are not subjects of this appeal. The child and the half siblings were temporarily removed from the mother's care and placed in the custody of DSS, and the father commenced a modification proceeding (proceeding No. 2) pursuant to Family Ct Act article 6 seeking sole custody of the child.
Following some testimony on the first day of the fact-finding hearing, the mother entered an admission that, when the neglect proceeding was commenced, she was suffering from untreated mental illness, specifically postpartum depression with psychosis, and that this condition had prevented her from providing the child with a minimal degree of care. Family Court adjudicated the child to be neglected based upon this admission. After a Lincoln hearing and a consolidated hearing on, as pertinent here, the dispositional phase of the neglect proceeding and the father's modification petition, the court dismissed the father's petition, temporarily released the child to the father for a period of one year, and required him to submit to the court's jurisdiction during that period and to comply with terms and conditions that included permitting home visits and providing parenting time for the mother. The father appeals.[FN1]
When Family Court determines that a child who has been removed from his or her home in a proceeding pursuant to Family Ct Act article 10 may appropriately reside with a nonrespondent parent, it is authorized to temporarily release the child to the nonrespondent parent or to grant a final order of custody pursuant to Family Ct Act article 6 and Family Ct Act § 1055-b (see Family Ct Act §§ 1017 [1] [a], [c] [i]; [2] [a] [i], [ii]; 1054). A dispositional order in a neglect proceeding "must reflect a resolution consistent with the best interests of the child[] after consideration of all relevant facts and circumstances," and neither such an order nor a best interests determination in a custody modification proceeding will be disturbed on appeal when it is supported by a sound and substantial basis in the record (Matter of Alaina E., 33 AD3d 1084, 1087 [2006]; see Matter of Joseph A. v Gina ZZ., 143 AD3d 1098, 1099 [2016]; Matter of Deborah E.C. v Shawn K., 63 AD3d 1724, 1725 [2009], lv denied 13 NY3d 710 [2009]). Here, the father contends that it was in the child's best interests to award sole custody to him pursuant to Family Ct Act article 6 and that there was no need for the court to exercise jurisdiction and supervision over him and, thus, the court erred in releasing the child to him temporarily and in dismissing his modification petition.
As a threshold matter, we reject the father's contention that the matter should be remitted to Family Court because the court failed to set forth the facts it deemed to be essential to the outcome of the proceedings (see CPLR 4213 [b]). Although the court made no findings of fact in its dispositional order, it included a statement of the reasons for its disposition as required by Family Ct Act § 1052 (b) (i), and the record evidence is sufficiently well-developed to permit this Court to exercise its independent factual review power in an analysis of the child's best interests (see Matter of Michael YY. v Michell ZZ., 149 AD3d 1284, 1285 [2017]; Matter of Knight v Knight, 92 AD3d 1090, 1090 [2012]).
Family Court was authorized to hear the dispositional phase of the neglect proceeding jointly with the custody modification proceeding and was required to decide the modification proceeding in accordance with the terms of Family Ct Act article 6 (see Family Ct Act § 1055-b [a-1]). The neglect finding, based upon the mother's admission, was sufficient to meet the father's initial burden to demonstrate that a change in circumstances had occurred that warranted a review of the child's best interests (see Matter of O'Dale UU. v Lisa UU., 140 AD3d 1249, 1250 [2016]; Matter of Jeremy J.A. v Carley A., 48 AD3d 1035, 1036 [2008]; see generally Matter of Rosen v Rosen, 162 AD3d 1283, 1284 [2018]). An analysis of the child's best interests was therefore justified, requiring "the review of factors such as each parent's relative fitness and past parenting performance, the duration of the prior custody arrangement, the child's wishes, the respective home environments, including the existence of domestic violence, and the likelihood of each parent to foster a relationship between the child and the other parent" (Matter of Faber v Overbaugh, 156 AD3d 1144, 1146 [2017] [internal quotation marks and citations omitted]).
The evidence demonstrated that the child had resided with the mother and her half siblings throughout her life. By all accounts, the child and the father shared a warm and loving relationship, and she enjoyed spending time with him. The father testified that he resided in his parents' home, where there was sufficient room to provide the child with her own bedroom. A home study had concluded that this residence would be safe and appropriate for the child. The father worked in a bakery from 2:00 p.m. to 10:00 p.m. daily, and he provided the child's health insurance coverage as a benefit of his employment. The father's mother (hereinafter the grandmother) testified that she had a good relationship with the child and was willing to care for her during the father's working hours. A DSS caseworker testified that DSS had no concerns about the father's suitability as a caretaker for the child, and DSS supported his request for sole custody as a means of reunifying the child with a family member as quickly as possible.
While these factors supported the father's custody request, there was also evidence that the father's involvement in the child's life had been limited before she was removed from the mother's care. The father acknowledged that the child had never resided with him, he had not exercised his scheduled parenting time regularly, and he did not know the name of the child's pediatrician or the school that she had attended while she lived with the mother. He testified that he did not speak directly with the mother, preferring to route all communications and visitation arrangements through the grandmother to avoid potential conflict. Of concern, one of the stated bases for Family Court's determination that an award of sole custody was not in the child's best interests was its review of reports of statewide orders of protection, which revealed the existence of an order of protection issued against the father in Troy City Court in November 2015 on behalf of three of the father's other children. The order directed the father "to refrain from committing the crimes enumerated therein" against these three children for a five-year period. The record neither includes this order of protection nor identifies the nature of the referenced crimes or the reason for the order's five-year duration (see CPL 530.12 [5]; Family Ct Act § 842). Nevertheless, the existence of this order supports Family Court's decision to release the child to the father temporarily, thus permitting the court to impose requirements for the father's submission to the court's jurisdiction and compliance with specified conditions that could not have been combined with a custody award pursuant to Family Ct Act article 6 (see Family Ct Act §§ 1052 [a] [ii], [vii]; 1054 [b]).
We reject the argument that the father was not given notice that the order of protection would be considered, in light of the statutory mandate that Family Court conduct a review of the registry of orders of protection before issuing any custody order (see Family Ct Act § 651 [e] [1], [3] [ii]; Executive Law § 221-a). Likewise, contrary to the father's argument that there was no opportunity to develop the record on mitigating circumstances possibly related to this order, nothing prevented him from disclosing its existence and any pertinent related facts during the course of the dispositional hearing, in which he was specifically asked about the three children who are the subjects of the order.
As another basis for its finding that an award of sole custody to the father was not in the child's best interests, Family Court found that the mother required continued supervision and services related to the child, and that the child's safety would be jeopardized if the mother was no longer under supervision or receiving services pursuant to Family Ct Act article 10. Family Ct Act § 1052 precludes the court from combining an order placing the respondent in a neglect proceeding under supervision with an award of custody pursuant to Family Ct Act article 6 to a nonrespondent parent (see Family Ct Act § 1052 [v], [vii]). The testimony at the dispositional hearing established that the mother was making progress toward the goal of reunification with the child and her half siblings, and had satisfied several of the requirements established as part of the neglect adjudication, including obtaining housing, avoiding drugs, complying with mental health and substance abuse evaluations and treatment, completing a parenting course, and consistently exercising supervised visits with the child. The postpartum depression that had previously caused her to experience hallucinations had resolved, and her visits with the child, according to a caseworker, "really [did] go very well." Nevertheless, significant concerns remained relative to the mother's ability to care and provide for the child. In sum, although the evidence demonstrated that the mother was making progress, the record still provided a sound and substantial basis for the conclusion that continued supervision of the mother was required to ensure the child's safety.
Although the general preference for keeping siblings together has become more difficult due to changing family structures, "it is often in [a] child's best interests to continue to live with his [or her] siblings. While this . . . is not an absolute, the stability and companionship to be gained from keeping the children together is an important factor for the court to consider" (Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; accord Matter of Angela N. v Guy O., 144 AD3d 1343, 1345-1346 [2016]). The testimony established that an award of sole custody to the father would have permanently separated the child from her half siblings, as he lived a considerable distance from the homes of the mother, the foster family where DSS recommended that the younger half sibling should continue to reside until he could be returned to the mother's care, and the older half sibling's father in a different state [FN2]. Temporary release of the child to the father for a period of one year allows a potential for the eventual reunification of the child with her half siblings if the mother continues to progress in resolving the conditions that led to their removal from her care. Upon review of the evidence as a whole, we find a sound and substantial basis in the record for Family Court's determination that it was in the child's best interests to release her temporarily to the father's care and to dismiss his petition for sole custody (see Family Ct Act §§ 1052 [a] [ii]; 1054; see generally Matter of Aliyah B. [Denise J.], 87 AD3d 943, 944 [2011]).
McCarthy, Egan Jr., Lynch and Devine, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: This Court has been informed that the child's one-year placement with the father expired during the pendency of this appeal, and the child has now been returned to the mother's care. We agree with the father that this appeal has not been rendered moot, as his rights and interests will be directly affected by this Court's determination of his challenge to the dismissal of his custody modification petition (see generally Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]).

Footnote 2: The father of the older half sibling also petitioned for an award of sole custody pursuant to Family Ct Act article 6. The record does not reveal the outcome of that proceeding.