Matter of Edwards v Ferris (2021 NY Slip Op 04306)





Matter of Edwards v Ferris


2021 NY Slip Op 04306


Decided on July 9, 2021


Appellate Division, Fourth Department


Troutman, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 9, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, TROUTMAN, AND WINSLOW, JJ.


504 CAF 19-01610

[*1]IN THE MATTER OF ROBERT C. EDWARDS, PETITIONER-APPELLANT,
v
FELICIA N. FERRIS, RESPONDENT-RESPONDENT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (MERIDETH H. SMITH OF COUNSEL), FOR PETITIONER-APPELLANT.
MARK D. FUNK, CONFLICT DEFENDER, ROCHESTER (CAROLYN R. WALTHER OF COUNSEL), FOR RESPONDENT-RESPONDENT.
MARGARET MCMULLEN RESTON, ROCHESTER, ATTORNEY FOR THE CHILD. 


Troutman, J.
 Appeal from an order of the Family Court, Monroe County (Thomas W. Polito, R.), entered July 31, 2019 in a proceeding pursuant to Family Court Act article 6. The order, inter alia, granted the cross petition of respondent for permission to relocate with the subject child to Arizona. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Opinion by Troutman, J.:
In this proceeding pursuant to Family Court Act article 6, petitioner father appeals from an order that, inter alia, granted respondent mother's cross petition for permission to relocate with the subject child. Contrary to the father's contention, Family Court properly granted the cross petition. Accordingly, we affirm.
I
A prior order of custody and visitation awarded the mother sole custody of the child with visitation to the father. That order included a provision prohibiting either parent from permanently removing the child from Monroe County without the written consent of the other parent or a court order. Despite that provision, the mother unilaterally relocated to Arizona with the five-year-old child. Approximately one year later, the father discovered the mother's whereabouts and commenced this proceeding by way of petition seeking custody of the child. The mother filed a cross petition seeking permission to relocate nunc pro tunc. Therein, she asserted that she relocated due to a "continuous and relentless cycle of domestic violence" perpetrated by the father.
At a hearing on the petition and cross petition, the mother testified about instances of domestic violence perpetrated by the father. Once, during the brief period that they lived together, the mother tried to leave their home with the child and the father prevented her from doing so by physically restraining her and blocking the doorway; the father later persuaded her to return by threatening to "blow his head off." Another time, when the mother declined to have sex with him, the father placed his hands around her neck while she was holding the child and choked her until she nearly lost consciousness. As a result of that incident, the court issued a one-year no-contact order of protection. When the mother reported the father's noncompliance with that order, he came to her residence, tried to break the door down by kicking it, and broke the taillights on her car. During that incident, the father gestured to his waistband as if he had a gun, causing the mother to fear for her life. After that, he continued sending her threatening text messages containing verbally abusive language. In addition, he sent her hundreds of messages over her social media account. She told him repeatedly to stop, but eventually she gave up and deleted the account. One day, while the mother was picking the child up from the father's residence, he began screaming at her in front of the child, calling her "a piece of shit" and telling her that she "wasn't going to win," causing her again to fear for her safety. Days later, the mother's fiancé found a threatening note that someone left on her car. The mother acknowledged that the note was not in the father's typical handwriting, but testified that she believed someone wrote it at his behest. The contents of the note caused the mother to fear for her safety. Shortly thereafter, the mother and her fiancé decided to move cross-country in order to ensure her safety and that of the child. She chose a location in Arizona based on the quality of the schools, affordability, and relative closeness to family in California. She did not inform the father or request permission of the court out of fear of retaliation from the father.
The father denied the allegations of domestic violence, testifying that he had never been criminally charged with domestic violence, he never perpetrated acts of domestic violence against the mother in front of the child, he never threatened the mother, and there were no incidents involving the police or Child Protective Services in the year before the mother's relocation. He denied owning any weapons, except for a collection of samurai swords. Nor did the father have a job or a driver's license. Instead, he lived with his brother in exchange for providing child care. He had never paid child support. If he were awarded custody of the child, he would rely on his brother to pay for and transport the child to private school.
In its trial findings, the court found the father's testimony not to be credible. The mother, in contrast, "gave honest and truthful testimony," particularly concerning instances of domestic violence perpetrated by the father in the child's presence and threats made towards the mother. The child's maternal grandmother, who corroborated portions of the mother's testimony at the hearing, gave "exceptionally credible" testimony. The court found that the mother's fear of the father "was not feigned or pre-textual," and that her decision to relocate without informing him was not to deprive him of visitation, but to protect her own safety. Although the court stated that her conduct in doing so "cannot be condoned," it denied the father's petition for custody due to his own "fundamental unfitness," granted the mother's cross petition for permission to relocate with the child, and awarded visitation to the father in Monroe County.
II
"Although the unilateral removal of the child[ ] from the jurisdiction is a factor for the court's consideration . . . , an award of custody must be based on the best interests of the child[ ] and not a desire to punish a recalcitrant parent" (Matter of Tekeste B.-M. v Zeineba H., 37 AD3d 1152, 1153 [4th Dept 2007] [internal quotation marks omitted]). In determining the best interests of the child, the court is "free to consider and give appropriate weight to all of the factors that may be relevant to the determination" (Matter of Tropea v Tropea, 87 NY2d 727, [*2]740 [1996]). Those factors "include, but are certainly not limited to each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (id. at 740-741; see Matter of Wells v Dellago, — AD3d &mdash, — 2021 NY Slip Op 03459, *1-2 [2d Dept 2021]). Courts place considerable weight on the effect of domestic violence on the child (see Matter of Eddington v McCabe, 98 AD3d 613, 615 [2d Dept 2012]; Matter of Clarke v Boertlein, 82 AD3d 976, 977 [2d Dept 2011]; see also Matter of Monique J. v Keith S., 187 AD3d 500, 501 [1st Dept 2020]; Matter of Ramirez v Velazquez, 74 AD3d 1756, 1757 [4th Dept 2010]), particularly when a continuing pattern of domestic violence perpetrated by the child's father compels the mother to relocate out of legitimate fear for her own safety (see Matter of Ramon R. v Carmen L., 188 AD3d 545, 545 [1st Dept 2020]; Matter of Hill v Dean, 135 AD3d 990, 991-992 [3d Dept 2016]; Matter of Baker v Spurgeon, 85 AD3d 1494, 1496-1497 [3d Dept 2011], lv dismissed 17 NY3d 897 [2011]; Matter of Sara ZZ. v Matthew A., 77 AD3d 1059, 1060 [3d Dept 2010]; Matter of Melissa Marie G. v John Christopher W., 73 AD3d 658, 658-659 [1st Dept 2010]; cf. Matter of Francis-Miller v Miller, 111 AD3d 632, 635-636 [2d Dept 2013]), or where the father minimized the past incidents of domestic violence (see Matter of Doyle v Debe, 120 AD3d 676, 680-681 [2d Dept 2014], lv denied 24 NY3d 910 [2014]; cf. Matter of Adam OO. v Jessica QQ., 176 AD3d 1418, 1420 [3d Dept 2019]). Indeed, where domestic violence is alleged in a petition for custody, "the court must consider the effect of such domestic violence upon the best interests of the child" (Matter of Jacobson v Wilkinson, 128 AD3d 1335, 1336 [4th Dept 2015] [internal quotation marks omitted]; see also Domestic Relations Law § 240 [1]).
Here, in making its determination, the court appropriately considered the fact that the mother unilaterally removed the child from the jurisdiction, determining that the mother "did not relocate to separate the father from the child, but instead acted in good faith to escape the threat of domestic violence" (Hill, 135 AD3d at 992). Although the court did not countenance the mother's decision to relocate without permission, "it was the father's [violent] conduct that prompted [her] move to [Arizona] in the first instance and triggered the resulting disruption of his relationship with his daughter" (Baker, 85 AD3d at 1497). Furthermore, although the court did not expressly engage in the analysis required under Tropea (87 NY2d at 740-741), according deference to the court's factual findings and credibility assessments (see Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1168 [3d Dept 2020]), we conclude that "there is a sound and substantial basis in the record supporting the court's determination that 'relocation would enhance the child['s life] economically, emotionally, and educationally, and that the child['s] relationship with the father could be preserved through a liberal parental access schedule including, but not limited to, frequent communication and extended summer and holiday visits' " (Matter of McMiller v Frank, 181 AD3d 1154, 1154-1155 [4th Dept 2020], lv denied 35 NY3d 911 [2020]; see Matter of Mineo v Mineo, 96 AD3d 1617, 1618-1619 [4th Dept 2012]).
III
We reject the father's further contention that the court erroneously conditioned visitation on his attendance at mental health counseling. The court may order a parent to obtain counseling as a component of a custody or visitation order, but it " 'does not have the authority to order such counseling as a prerequisite to custody or visitation' " (Matter of Allen v Boswell, 149 AD3d 1528, 1529 [4th Dept 2017], lv denied 30 NY3d 902 [2017]). Here, the court did not order counseling as a prerequisite to visitation. Rather, in its trial findings, the court conditioned the mother's payment for the child's travel to Monroe County for visitation upon the father's [*3]attendance at counseling. If the father refuses to attend counseling, he may exercise visitation by traveling to Arizona or by paying for the child's travel to Monroe County.
We have reviewed the father's remaining contention and conclude that it does not require reversal or modification of the order.
Entered: July 9, 2021
Mark W. Bennett
Clerk of the Court